## CLARENCE E. BURGESS v. TURLE & COMPANY.[1]

May 25, 1923.

No. 23,388.

**Defamatory statement privileged under statute of North Dakota.**

A notice canceling a North Dakota contract for the sale and conveyance of land in that state, on account of the default of the vendee, contained the statement that his default consisted in appropriating to his own use crops belonging to the vendor, and the further statement that he had misappropriated such crops. The North Dakota statute requires the vendor to state in the notice the default which has occurred. It defines privileged communications as those made in legislative or judicial proceedings or in any other proceeding authorized by law. *Held:* That the statements with respect to the nature of the vendee's default could not be made the basis of a libel action against the vendor; that the notice which was published in newspapers, as authorized by the North Dakota statute, was absolutely privileged; that the statements complained of were pertinent and material, and, since the circumstances of the publication were not in dispute, the trial court properly ruled that, although the statements may have been defamatory, they were absolutely privileged and hence defendant was not liable to plaintiff.

Action in the district court for St. Louis county to recover $100,-000 for libel. The case was tried before Fesler, J., who when plaintiff rested and at the close of the testimony denied defendant's motions for dismissal and a directed verdict, respectively, and a jury which returned a verdict for $9,982. Defendant's motion for judgment notwithstanding the verdict was granted. From the judgment entered in favor of defendant for $414.16, plaintiff appealed. Affirmed.

*McManus & Morgan,* for appellant.

*McClearn & Gilbertson,* for respondent.

[1]Reported in 193 N. W. 945.

LEES, C.

Action for libel in which plaintiff had a verdict. On defendant's motion, judgment in its favor was ordered notwithstanding the verdict, and plaintiff has appealed from the judgment.

Plaintiff was the vendee and defendant the vendor in a contract for the sale of land in North Dakota, executed July 1, 1915. The purchase price, which was $47,270.42, was to be paid on or before December 1, 1920. Interest at the rate of 6 per cent was to be paid annually. Plaintiff was to crop the land. Defendant was to retain the ownership of and sell the crops. They were to be delivered by plaintiff at a place designated by defendant. The proceeds of their sale were to be first applied to the payment of the expenses incurred in producing them. In such expenses $100 was to be included for each quarter section of land cropped to compensate plaintiff for supervising the cropper and attending to the marketing of the grain. The remainder of the proceeds was to be applied to the payment of taxes and interest and to the reduction of the principal specified in the contract. Plaintiff was authorized to make sales of the land. As sales were made, defendant was to convey title to the purchaser on receiving a stipulated sum for each tract sold. On May 14, 1919, a supplemental contract was made. It recited the former contract and stated that $13,278.01 was still due thereon and that two parcels of land remained to be sold. By one of its terms plaintiff was required to convey to defenadnt three lots in Devils Lake, North Dakota. He was to receive a credit of $6,000 for them, thus reducing his indebtedness to $7,278.01. He subsequently did convey these lots and received the credit.

Defendant was a corporation handling consigned grain at Duluth and Minneapolis for a commission. Plaintiff was a North Dakota grain buyer with whom defendant had had extensive dealings. He became largely indebted to defendant and prior to July 1, 1915, it had recovered judgments against him, which he satisfied by conveying the lands described in the contract of that date. Plaintiff had been a resident of Devils Lake, but in the fall of 1918 his family went to California to live and he joined them in the summer of 1919.

In July of that year defendant wrote him inquiring about the crops on the unsold land, but received no answer. A crop of rye had been grown and plaintiff had sold it, receiving $301.90, which was less than the expense of producing the crop. Plaintiff made no report to defendant, apparently for the reason that nothing was due from him. Here the matter rested until July, 1920, when defendant placed the contract in the hands of its attorney to take such legal proceedings as might be necessary to enforce its rights thereunder. A provision of the contract read thus:

"Should default be made in the delivery of said several payments of grain or any of them, or any part thereof, as herein agreed * * * said second party * * * hereby agrees, on demand of the party of the first part, to * * * surrender possession of said premises and every part thereof."

and another read:

"Should this contract be recorded * * * the cancelation of the same, in the event that default has been made in any of the terms and conditions thereof, shall be in accordance with the law as prescribed by the statutes of the state of North Dakota * * *."

By section 8119, Comp. Laws N. D. 1913, the giving of a notice by the vendor to the vendee in a contract for the conveyance of land is required as a prerequisite to the cancelation of the contract. Section 8120 contains the following directions with respect to the notice:

"Whenever any default shall have been made in the terms or conditions of any such instrument * * * and the owner or vendor shall desire to cancel or terminate the same [he] shall, within a reasonable time after such default, cause a written notice to be served upon the vendee * * * stating that such default occurred, and that said contract will be cancelled or terminated."

Section 8121 directs that personal service of the notice shall be made if the vendee resides in the state; if he is not a resident thereof, service must be made by the publication of the notice in a newspaper published in the county where the land is situated.

Defendant's attorney at Duluth forwarded the contract to Murphy & Toner, attorneys at Grand Forks, North Dakota, instructing them to take the necessary steps to cancel it. They prepared a cancelation notice specifying plaintiff's alleged default as follows:

"You have appropriated to your own use all crops and proceeds of crops raised upon the real estate hereinafter described during the year 1919 instead of delivering and paying the same * * * to Turle & Company to be applied upon the balance due and owing from you under said contract of $7,278.01, with interest at 6 per cent per annum from May 14, 1919, and have failed and refused to make any settlement and accounting for the crops of 1919 with said Turle & Company. Because of your failure to comply with the provisions of said contract in the respects mentioned and your misappropriation of the 1919 crops, said Turle & Company are unable to state the exact amount owing for proceeds of said 1919 crops."

The notice was delivered to the Devils Lake Journal and to the Mouse River Farmers Press, and was duly published in each of these newspapers.

In October, 1920, this action was begun, the libel complained of being the statement in the notice that plaintiff had (1) appropriated the crops of 1919 to his own use and (2) that he had misappropriated them. The answer pleaded the North Dakota statute relative to the cancelation of contracts for the conveyance of land, the truth of the statements in the notice, and alleged that it was a privileged communication under section 4354, Comp. Laws N. D. 1913. That section defines privileged communications, including in the definition those made "in any legislative or judicial proceeding, or in any other proceeding authorized by law." The court instructed the jury to return a verdict for defendant if satisfied that it had proved that the statements in the notice were true. The verdict determined that issue in plaintiff's favor, and we pass directly to a consideration of the only other issue in the case.

Grant that the statements of which plaintiff complains were untrue and calculated to bring him into disrepute, was the publication of the notice nevertheless absolutely privileged? If it was, he can

obtain no relief in a civil action no matter how hard the objectionable words bear upon him, for the rule is that, if the defamatory matter published was absolutely privileged, it will not support an action for libel, although the publication was malicious and known to be false. Peterson v. Steenerson, 113 Minn. 87, 129 N. W. 147, 31 L. R. A. (N. S.) 674; 17 R. C. L. 330. The rule is subject to the qualification that the defamatory statement must be pertinent and material to the case or proceeding in which it was made. Peterson v. Steenerson, supra; Sherwood v. Roger & Powell, 61 Minn. 479, 63 N. W. 1103, 29 L. R. A. 153, 52 Am. St. 614; Hammer v. Forde, 125 Minn. 146, 145 N. W. 810; note to Simon v. London Co. 16 L. R. A. 746. Its relevancy where the circumstances under which it was made are not in dispute is a question of law for the court and not a question of fact for the jury. Harlow v. Carroll, 6 App. D. C. 128; Jones v. Brownlee, 161 Mo. 258, 61 S. W. 795, 53 L. R. A. 445; Crockett v. McLanahan, 109 Tenn. 517, 72 S. W. 950, 61 L. R. A. 914; Newell, Slander and Libel, § 288.

The two ultimate questions to be examined in the light of these principles are: (1) Was the published notice given in the course of a proceeding to which the protection extended by the rule of absolute privilege is applicable? (2) If so, were the statements complained of pertinent and material?

It seems clear that the first question must be answered in the affirmative. The proceeding was one not only authorized but required by the law of North Dakota. Section 4354 of the statutes of that state places proceedings authorized by law in the same category as legislative and judicial proceedings to which the rule of absolute privilege has always been extended.

Section 8120 of the statute covers all defaults in the terms or conditions of land contracts. Such terms and conditions may be few or many, different in character, and their nonfulfilment attended by different consequences. Therefore the nature of a default on the part of the vendee will vary according to the nature of his stipulations. As we read the statute, it requires the vendor to state the particular default which has occurred. We think something more is required than a bare statement that the vendee is in default.

In the instant case, the alleged default consisted in the failure to account for the vendor's grain or the proceeds of its sale. A statement to that effect was proper and necessary. It might have been phrased less harshly than it was, but that is not the test of its relevancy or materiality. It was not a gratuitous calumny. The most to be said is that it was an over-statement of an alleged fact. That is a common fault of pleadings which, by the North Dakota statute, are placed in the same class as this notice. A rule which required the statement of a cause of action involving moral turpitude to be reduced to its lowest terms to avoid the possibility of a libel suit might be effective in eliminating surplusage and redundancy from pleadings, but it has never been adopted.

In the able opinion in Harlow v. Carroll, supra, the court approved of the following test for determining whether the matter pleaded exceeded the limits within which privileged publications are confined: Was the allegation so palpably wanting in relation to the subject matter of the controversy that no reasonable man could doubt its irrelevancy and impropriety? The liberal rule stated in Kemper v. Fort, 219 Pa. St. 85, 67 Atl. 991, 13 L. R. A. (N. S.) 820, 123 Am. St. 623, 12 Ann. Cas. 1022, which received the approval of this court in Hammer v. Forde, supra, is substantially the same. If defendant had brought an action to cancel the contract instead of giving the statutory notice of cancelation, and had alleged in its complaint as the ground for cancelation that the vendee had appropriated the 1919 crops to his own use or had sold them and misappropriated the proceeds instead of accounting for them, there could be no question about the privileged character of the allegations. Neither can there be any question here if the notice of cancelation stands on the same footing as a complaint in a civil action. We are satisfied that it does in view of the express declaration of the North Dakota statute, section 4354. These considerations are decisive of the principal question in the case. The alleged defamatory statements were absolutely privileged and cannot be made the foundation for an action for libel.

The learned trial court was right in granting defendant's motion for judgment, and the judgment is affirmed.