# GUSTA MATTHIS, ALSO KNOWN AS GUSTA L. MATTHIES, v. ALOIS D. KENNEDY, JR.[1]

November 26, 1954.

No. 36,370.

---

[1]Reported in 67 N. W. (2d) 413.

*Harry W. Oehler,* for appellant.

*Meier, Kennedy & Quinn,* for respondent.

*E. W. Murnane, R. M. Carlson,* and *R. E. Kyle,* for *amicus curiae,* Ramsey County Bar Association.

NELSON, JUSTICE.

This is an action in defamation for alleged slander brought in the district court of Ramsey county. On the day the complaint was filed defendant moved the court for a summary judgment on the ground that as a matter of law there was no basis for the action, asserting the defense of absolute privilege. The district court held, as a matter of law, that the remarks were absolutely privileged and ordered that a summary judgment be entered in defendant's favor. The plaintiff moved the court for an order amending the findings of fact and conclusions of law, and this motion was denied. She renewed the motion, and it was again denied. A summary judgment was entered in favor of the defendant and plaintiff appeals from the judgment.

While the record is meager, the facts set forth on appeal appear to be as follows: On or about July 30, 1951, the plaintiff was appointed the general guardian of Fred J. Matthies, an incompetent, by the probate court of Ramsey county. The sisters of the ward petitioned the probate court to remove plaintiff as guardian on the ground that she was unsuitable, and an order removing her as guardian was entered March 6, 1952. The plaintiff was ordered to render her final account following the appointment of defendant, an attorney at law in the city of St. Paul, as her successor.

Plaintiff submitted her final account. At the hearing before the court defendant made and entered certain objections to it. The hearing was continued to July 2, 1952, when plaintiff petitioned the probate court to consider and re-examine certain matters set forth by the petition and to make appropriate orders based upon the equities enjoyed by her, namely, that she was entitled to certain adjustments in the final account principally consisting of charges for maintenance and support money. This hearing was again continued, and when it was resumed on July 8, 1952, and while in progress, the alleged slanderous words were uttered by the defendant. Defendant, who was at the time the general guardian of the ward, appeared at the hearing as his own counsel. According to paragraph IV of the complaint, plaintiff was at the time seeking a declaration that she was legally married to Mr. Matthies and therefore entitled to support money as his lawful wife, among other adjustments requested by her. Her attorney, Mr. Oehler, was speaking as follows:

"By Mr. Oehler: (Attorney for Plaintiff)   Yes, I think possibly the accounting has not been up to the required standard, but some tolerance could be accorded to a woman who has been the wife— she has been accused of being a—

"The Court: (Judge Devitt)   Common law?

"By Mr. Oehler: (Attorney for Plaintiff)   Well, even a common law wife.  And they were married—

"By Mr. Kennedy: (Defendant)   The word is adulteress."

The complaint alleges that plaintiff and Fred J. Matthies are husband and wife; that they were married on December 22, 1941, at Blair, Nebraska; and that they have resided and cohabited in St. Paul, Minnesota, as husband and wife, since their marriage. In the answer defendant denies that plaintiff is the legal wife of Fred J. Matthies and alleges that Mr. Matthies has a former wife still living, that that marriage was never dissolved, and that, therefore, the marriage referred to in the complaint is null and void.

Plaintiff contends that the district court erred in granting defendant's motion for summary judgment on the ground that he was

absolutely privileged to speak the words in issue, because, the words spoken were not relevant and pertinent to the issues before the court.

Defendant contends that the alleged slanderous words were relevant and pertinent to the matter before the court for the reason that the issues of the alleged marriage to the ward and the right to maintenance and support money from his estate were before the court for determination in a judicial proceeding at the time.

The record indicates that, at the time the alleged slanderous words were spoken, the probate court was faced with the question of whether plaintiff, the former guardian of Fred J. Matthies, was entitled to have her final account adjudged in the light of her claim that she was married to the ward and his legal wife as alleged in her complaint. Since she had made a specific request for such consideration in the proceeding before the probate court, the question of the validity of her alleged marriage to the ward was, we believe, incidentally involved in the hearing as an important issue in the adjustment of the final account. No question can arise as to the jurisdiction of probate courts in this state over persons under guardianship for this is controlled by Minn. Const. art. 6, § 7, and the legislature has said that for all matters over which it has jurisdiction it is a court of record. See, M. S. A. 525.01.

We then come to the question: Were the alleged slanderous words, spoken by defendant while acting as a court-appointed guardian and as his own lawyer at a hearing in a court of record having jurisdiction of the guardianship proceeding, absolutely privileged so that no action for slander can be based thereon? Were the alleged slanderous words, when spoken at a proceeding where the issue of whether or not the appellant was the legal wife of the ward was before the probate court as one of the issues determinative of the right to receive maintenance and support money, relevant and pertinent to the issues presented and thus absolutely privileged?

We are concerned here with the law of defamation, the fundamental basis of which is that one is liable for an unprivileged communication or publication of false and defamatory matter which

injures the reputation of another. Privileged defamatory matter is divided into two general classes: (1) That which is absolutely privileged, and (2) that which is qualifiedly and conditionally privileged. Absolute privilege means that immunity is given even for intentionally false statements, coupled with malice, while a qualified or conditional privilege grants immunity only if the privilege is not abused and defamatory statements are publicized in good faith and without malice.

A privileged communication has been defined generally in 53 C. J. S., Libel and Slander, § 87a, as follows:

"Privilege is a recognized defense to a civil action for libel or slander, but in order to be shielded from liability for the publication of defamatory words on this ground, the communication must be a privileged one uttered on a privileged occasion by a privileged person to one within the privilege."

The doctrine of privileged communication rests in that of public policy. It is peculiarly so in the case of absolute privilege, for in the case of a communication recognized as absolutely privileged even the presence of express malice does not destroy the privilege. The absolute-privilege rule is confined within narrow limits, and the courts of this country as a rule have steadily refused to enlarge those limits confining the cases to situations in which the public service or the administration of justice requires complete immunity from being called to account for language used. It has been clearly expressed by the authorities that it is not intended so much for the protection of those engaged in the service as it is for the promotion of the public welfare. It is therefore the occasion on which the communication of the defamatory words was made which determines the privilege. The recognized class of occasions where the publication of defamatory matter is absolutely privileged is confined within narrow limits, and the courts have held that whoever asserts the right to take advantage of the privileged occasion or instance must, in character, appear as party or pleader. Any publication made, whether oral or in writing, must be made "in office" in the character of judge, juror, witness, litigant, or counsel—in the performance of

the public duty or in the exercise of the private right upon which the immunity is based. See, Laun v. Union Elec. Co. 350 Mo. 572, 166 S. W. (2d) 1065, 144 A. L. R. 622; 17 R. C. L., Libel and Slander, § 76; 33 Am. Jur., Libel and Slander, § 125; 9 Col. L. Rev. 463, 490.

In judicial proceedings the privilege is not restricted to trials but includes every proceeding of a judicial nature if the hearing is before a competent court or before a tribunal or officer clothed with judicial or even quasi-judicial powers. The general rule in this country is that, with certain recognized exceptions, defamatory matter published in the due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation although made maliciously and with knowledge of its falsehood. It extends to the protection of the judge, the jury, the party or parties, counsel, and witnesses. A publication in the course of a judicial proceeding, if within certain exceptions and not absolutely privileged, is at least within the conditional or qualified privilege rule.

The question presented here is whether defendant's privilege is qualified or absolute. The difference is that malice destroys the one and does not change the other. Odgers, Libel and Slander (6 ed.) p. 227. There is no difference of degree between the privilege of counsel and that of parties and witnesses for they are all phases of the same immunity. The rule is that counsel are absolutely privileged in respect of any statements, oral or written, made in judicial proceedings and pertinent thereto. In England, the immunity is broader. There the privilege exists whether certain statements are relevant or not. See, Munster v. Lamb, 11 Q. B. D. 588, 7 E. R. C. 714.

The majority opinion in this country adds the condition that the privilege will be lost if the slander or the libel is irrelevant. The leading early American cases are: Hastings v. Lusk, 22 Wend. (N. Y.) 410, 34 Am. D. 330; Hoar v. Wood, 44 Mass. (3 Metc.) 193; Maulsby v. Reifsnider, 69 Md. 143, 161, 14 A. 505, 510. These cases establish the rule which seems to be the prevailing one in this country today. It has been generally held that the privilege extended to counsel is for the interest and benefit of the party he

represents and to allow him full scope and freedom in support or defense of the rights of the party; that words spoken in the course of judicial proceedings—though they might be such as to impute crime to another and therefore if spoken elsewhere would import malice and be actionable in themselves—are not actionable if they are related to and applicable to the subject of inquiry; that in determining what is pertinent much latitude must be allowed to the judgment and discretion of those who are entrusted with the conduct of a cause in court; that, while this privilege must be restrained by some limit, a sufficient limit has been set so that neither party nor counsel shall avail himself of a situation to gratify private malice by uttering slanderous expressions either against party, witness, or third person which have no relation to the cause or subject matter of the inquiry; that, if this restriction be applied, then the absolute-privilege rule is on the whole subject to this exception for the promotion of the public interest and peace and serves the purpose of justice in allowing counsel full freedom of speech in conducting causes and advocating the rights of the parties they represent; and that this freedom of discussion thus restricted ought not to be impaired by numerous and refined distinctions.

It is also established by the prevailing authorities that, in determining whether matters spoken in the conduct of an action or contained in the pleadings are privileged, the test is not "Is it legally relevant?" but "Does it have reference and relation to the subject matter of the action and is it connected therewith?" In other words, does it have reference to or relation to or connection with the case before the court? If that relationship or connection exists, there is no liability for the utterance even if defamatory under the circumstances. Whenever the question of the relevancy and pertinency of matters alleged in pleadings, or of words uttered in the conduct of a judicial proceeding, is being inquired into, all doubt should be, under the prevailing rule, resolved in favor of relevancy and pertinency. And this is so not merely in the technical meaning of those words but in the broader approach which involves the inquiry in a judicial proceeding. The all-important question is: Does it have reference

to and relation to the subject matter of the action? See, Kemper v. Fort, 219 Pa. 85, 67 A. 991, 13 L.R.A.(N.S.) 820; Youmans v. Smith, 153 N. Y. 214, 47 N. E. 265; Harlow v. Carroll, 6 App. D. C. 128; Johnston v. Schlarb, 7 Wash. (2d) 528, 110 P. (2d) 190, 134 A. L. R. 474; Andrews v. Gardiner, 224 N. Y. 440, 121 N. E. 341, 2 A. L. R. 1371; Bussewitz v. Wisconsin Teachers' Assn. 188 Wis. 121, 205 N. W. 808, 42 A. L. R. 873. It seems clear from the texts and the authorities generally that the privilege embraces anything that may possibly be pertinent.

In the case of Burgess v. Turle & Co. 155 Minn. 479, 193 N. W. 945, the plaintiff commenced an action for libel complaining of a statement in a notice to cancel a contract that he had (1) appropriated the crops of 1919 to his own use and (2) misappropriated them. Our court in the course of its opinion said (155 Minn. 482, 193 N. W. 946):

"Grant that the statements of which plaintiff complains were untrue and calculated to bring him into disrepute, was the publication of the notice nevertheless absolutely privileged? If it was, he can obtain no relief in a civil action no matter how hard the objectionable words bear upon him, for the rule is that, if the defamatory matter published was absolutely privileged, it will not support an action for libel, although the publication was malicious and known to be false. Peterson v. Steenerson, 113 Minn. 87, 129 N. W. 147, 31 L.R.A.(N.S.) 674; 17 R. C. L. 330. The rule is subject to the qualification that the defamatory statement must be pertinent and material to the case or proceeding in which it was made. Peterson v. Steenerson, supra; Sherwood v. Roger & Powell, 61 Minn. 479, 63 N. W. 1103, 29 L. R. A. 153, 52 Am. St. 614; Hammer v. Forde, 125 Minn. 146, 145 N. W. 810; note to Simon v. London Co. 16 L. R. A. 746."

This court then laid down the following rule (155 Minn. 483, 193 N. W. 946):

"* * * Its relevancy where the circumstances under which it was made are not in dispute is a question of law for the court and not

a question of fact for the jury. Harlow v. Carroll, 6 App. D. C. 128; Jones v. Brownlee, 161 Mo. 258, 61 S. W. 795, 53 L. R. A. 445; Crockett v. McLanahan, 109 Tenn. 517, 72 S. W. 950, 61 L. R. A. 914; Newell, Slander and Libel, § 288."

It was there held that the two ultimate questions to be examined in the light of these principles are: (1) Was the published notice given in the course of a proceeding to which the protection extended by the rule of absolute privilege is applicable? (2) If so, were the statements complained of pertinent and material?

This court then referred to the case of Harlow v. Carroll, 6 App. D. C. 128, as follows (155 Minn. 484, 193 N. W. 947):

"In the able opinion in Harlow v. Carroll, supra, the court approved of the following test for determining whether the matter pleaded exceeded the limits within which privileged publications are confined: Was the allegation so palpably wanting in relation to the subject matter of the controversy that no reasonable man could doubt its irrelevancy and impropriety? The liberal rule stated in Kemper v. Fort, 219 Pa. St. 85, 67 Atl. 991, 13 L.R.A.(N.S.) 820, 123 Am. St. 623, 12 Ann. Cas. 1022, which received the approval of this court in Hammer v. Forde, supra, is substantially the same."

And this court held in the Burgess case that the alleged defamatory statements were absolutely privileged and could not be made the foundation for an action for libel. The rule laid down was followed in the case of Rolfe v. Noyes Bros. & Cutler, Inc. 157 Minn. 443, 196 N. W. 481.

Where the words spoken relate to the subject matter in a judicial proceeding or a judicial inquiry, the rule laid down by our court in the Burgess case and followed in Rolfe v. Noyes Bros. & Cutler, Inc., *supra*, is the practically universal rule in this country.

As already stated the all-important question is: Does the statement have reference and relation to the subject matter of the action? We quote from Sacks v. Stecker (2 Cir.) 60 F. (2d) 73, 75:

"By an almost unbroken line of authority in this country and England, a party who files a pleading or affidavit in a judicial pro-

ceeding has absolute immunity, though his statements are defamatory and malicious, if they relate to the subject of inquiry."

It is unnecessary to cite any further decisions or authorities in view of the fact that the American Law Institute in its Restatement of the Law of Torts (1938) has in its chapter on defamation stated the rule as it relates to classes of privilege, absolute and qualified, judicial officers, attorneys at law participating as counsel, parties to judicial proceedings, witnesses in judicial proceedings, and jurors. Restatement, Torts, § 586, contains the following statement:

"An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto."

See, *comments a* to *d,* inclusive, and § 585, *comments c* and *f.*

Restatement, Torts, § 587, contains the following statements as to parties to judicial proceedings:

"A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of a judicial proceeding in which he participates, if the matter has some relation thereto."

See, *comments a* to *e,* inclusive, and § 585, *comments c* and *f.*

In determining what is material, relevant, and pertinent, connected with and related to the subject under inquiry, much latitude must be allowed to the discretion of those who are entrusted with the conduct of a cause in court. The courts have recognized that a much larger allowance must be made for the ardent and excited feelings with which a party, or counsel who naturally and almost necessarily identifies himself with his client, may become animated by constantly regarding one side only of an animated controversy. The recognized exception, however, in this country, which differs from the English rule as far as absolute privilege is concerned, is

that, if counsel or party to the action in the trial of a cause maliciously slanders a party, or witness, or any other person, in regard to a matter that has no reference or relation or connection with the case before the court, then he is and ought to be answerable in an action by the injured party. Maulsby v. Reifsnider, 69 Md. 143, 14 A. 505.

There does not appear to us to be any dispute that the alleged statement in the instant case was made during the course of a judicial proceeding before the probate court of Ramsey county. The question for us to decide is whether the alleged statement was absolutely privileged. We are not passing upon the wisdom of the statement or its necessity or propriety under the circumstances. It may well have been unwise and inapplicable to the situation as a legal term under statutory law, and it may likewise violate the rule of courtesy and decorum that both sides to a controversy, as well as the court, expect in a judicial proceeding or inquiry. We cannot say on the state of the record indicating the issues involved, which were the subject of marriage, including charges of an illegal marriage or no marriage at all, that the plaintiff's reputation was so foreign to the issue that respondent, as both party and counsel in his own behalf, should have remained silent and in no manner commented on the position taken and the demands made by the plaintiff.

The all-important question, however, is determinative as a matter of law here. Was the alleged statement pertinent, material, connected with or related to the subject matter under inquiry? If it was so related in any manner, then all doubt must be resolved in favor of the defendant under the absolute-privilege rule. Upon the record presented we sustain the court below in holding that the alleged statement was under the circumstances, as a matter of law, absolutely privileged.

Affirmed.