SCHAFER, Appellant, v. SUCKLE, Respondent.

*October 28—November 26, 1963.*

For the appellant there were briefs by *Toman & Quackenbush* of Madison, and oral argument by *Neil J. Toman*.

For the respondent there was a brief by *W. L. Jackman,* attorney, and *Hart, Kraege, Jackman & Wightman* of counsel, all of Madison, and oral argument by *W. L. Jackman*.

DIETERICH, J.  The following facts are revealed by the record. Mrs. Schafer commenced an action for malpractice against Dr. Suckle in 1957.  The action arose out of his treatment of her for injuries allegedly sustained in 1949, in an automobile accident.  Mrs. Schafer alleged in her complaint that she had engaged Dr. Suckle in 1951, and that he was negligent in performing a pantopaque myelogram upon her person.  She claimed damages in the sum of $25,000. Dr. Suckle filed an answer to the malpractice complaint in which he denied any negligence, and alleged that Mrs. Schafer refused to co-operate with him, refused to follow his advice, and attempted to involve him in the perpetration of a fraud upon an insurance company.  The case came to trial before the circuit court for Dane county and a jury on October 19, 1959, more than two years after commencement of the action.  Before any witnesses were called, Mrs. Schafer moved in open court to dismiss the action on its merits with prejudice and without costs.  There was no opposition, and the motion was granted by the trial court.

The instant libel action is based upon the following allegation contained in Dr. Suckle's answer to Mrs. Schafer's complaint in the malpractice action :

"4. Further answering, defendant alleges that plaintiff intentionally resisted removal of the pantopaque and failed and refused to cooperate with defendant in his care and treatment of her, refused to follow his advice and attempted to involve defendant in the perpetration of a fraud upon Allstate Insurance Company by attempting to have defendant certify to injuries of a nature and character as were not present."

The sole issue on this appeal is whether the above allegation was privileged.

Mrs. Schafer's complaint in the instant libel action alleges that the allegation contained in paragraph four of Dr. Suckle's answer to her malpractice complaint was false and defamatory, and was not pertinent or relevant to the issues in the malpractice action. She claims that as a result of the alleged libel she suffered damage to her reputation in the sum of $250,000.

Dr. Suckle's answer stated that the allegations of his pleadings in the malpractice suit were true, and that he had reasonable grounds to believe that they were true; that the matters alleged were pertinent or relevant to the issues; and that they were privileged, being made in an answer filed in a judicial proceeding, and pertinent thereto. Dr. Suckle also alleged that since the answer was filed more than two years before the instant action was commenced, Mrs. Schafer was barred from bringing the libel suit by the limitations of secs. 330.14 and 330.21, Stats.[1]

Dr. Suckle testified at the trial that the allegation in his answer to the malpractice complaint was based on what he told his attorneys, and that he was aware of the "fraud"

---

[1] Sec. 330.14. "ACTIONS, TIME FOR COMMENCING. The following actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued . . ."

Sec. 330.21. "WITHIN TWO YEARS. Within two years: . . . (2) An action to recover damages for libel, slander, assault, battery or false imprisonment."

portion of the pleading. He felt that during the time he treated Mrs. Schafer she was more interested in her claim with the insurance company than anything else, and described her as being "claim-conscious." He stated that Mrs. Schafer felt she would never get better and would always be totally and permanently disabled, but that he told her this was not so. Dr. Suckle stated that it was his belief, based upon Mrs. Schafer's actions and remarks, she wanted him to certify that she was totally and permanently disabled. He further testified that Mrs. Schafer told him that if he did not give her a "good report," she would not be able to get any insurance money, and that when he advised her to seek further treatment, she replied, "I will take my chances if I can get the insurance settled and be disabled." He stated that he transcribed these two statements verbatim during an interview with Mrs. Schafer. Among the exhibits received in evidence was a note from Mrs. Schafer to Dr. Suckle, written on the bottom and back of the doctor's bill, which read as follows: ". . . your report to my company (Time Ins. Co.) does not indicate total disability and therefore I've been unable to collect proper compensation from them. What am I supposed to do in order to get this matter straighten out? . . . I would like an honest report from you. . . ." Dr. Suckle, in his written reply to Mrs. Schafer, stated that her note indicated that she had doubts concerning the veracity of his findings and opinions, and for that reason he recommended that she consult another physician. He testified that he had considerable difficulty with Mrs. Schafer as a patient, arising mainly out of her refusal to co-operate with him and her failure to follow his advice. Dr. Suckle further testified:

"Frankly I think if I had certified about Mrs. Schafer's disabilities and had given her the type of report she wanted, she would have never brought the malpractice suit."

The doctor was then asked the following questions by Mrs. Schafer's counsel:

"*Q*. . . . your feeling is if you had given her the report she wanted there would not have been a malpractice suit? *A*. I am sure there wouldn't have been.

"*Q*. For that reason that was interjected in the answer to the complaint? *A*. It wasn't interjected; it was relevant to the complaint. . . . As I said, I don't think Mrs. Schafer would have been at all worried about the pantopaque. When she was at the Mayo Clinic they told her they would not even recommend removing the pantopaque but Mrs. Schafer thought that this was some additional wedge she could use in getting more moneys from insurance companies.

"*Q*. And you will agree, Doctor, that you are now in the realm of what you thought and what you believed and even the matter of saying that it is relevant to the issue regarding your skill, this is a matter of so-called belief she tried to attempt to involve you in the perpetration of a fraud? *A*. That is my belief, Yes."

Mrs. Schafer testified that she knew her neck had been broken in the accident, and that she was not satisfied with Dr. Suckle's report because it was "silly" and "childish." She denied making any statements to Dr. Suckle to the effect that if she could not get a good report, she would not be able to collect insurance money, and testified that she was never interested in getting as much money as possible from her insurer.

The record also contains a report to Mrs. Schafer's insurer written by Dr. Kelly, one of the other physicians she had consulted. Mrs. Schafer made the following notation on the bottom of the report: "This report was not submitted to the Time Insurance Company because my disability is referred to as a 'sickness.' "

The record clearly establishes that the plaintiff felt she was totally disabled, and that Dr. Suckle believed she was not.

When Dr. Suckle submitted his report as to the extent of Mrs. Schafer's injuries, she wrote him, stating that his report did not indicate total disability and asking for an honest report. Dr. Suckle's testimony reveals that Mrs. Schafer stated to him that if he did not give her a good report, she would not be able to get any insurance money.

The trial court found the following facts: That the allegation in the answer was relevant; that Dr. Suckle believed it to be true; that it was made without malice or ill will on his part; that Mrs. Schafer suffered no substantial damage; and that the action was not commenced until more than two years after publication of the answer. The trial court's conclusions of law were that the allegation was absolutely privileged and in any event since Dr. Suckle honestly believed them to be true and pertinent and acted without malice, the allegation was conditionally privileged; and that the action was not commenced within the time limited by law.

The more-recent statement of this court on the subject of libelous statements made in judicial proceedings is found in the case of *Novick v. Becker* (1958), 4 Wis. (2d) 432, 435, 90 N. W. (2d) 620, wherein it was stated:

"Parties to judicial proceedings are absolutely exempt from responsibility for libel on the ground of privilege for any defamatory matter published in the course of judicial proceedings, subject to the possible qualification that such defamatory matter is pertinent or relevant to the case. Restatement, 3 Torts, p. 231, sec. 587; Prosser, Law of Torts (2d ed.), pp. 608, 609, sec. 95; 33 Am. Jur., Libel and Slander, p. 142, sec. 146; and 53 C. J. S., Libel and Slander, p. 167 *et seq.,* sec. 104."

This court, in adopting the general American rule as to the test of relevancy, stated as follows in *Bussewitz v. Wisconsin Teachers' Asso.* (1925), 188 Wis. 121, 125, 205 N. W. 808:

"The question of relevancy in these inquiries is for the determination of the court and not for the jury. In considering whether allegations in a pleading are pertinent or relevant, it does not follow that the same tests are to be applied as on motions to strike out averments as irrelevant. Although most of the American courts do not follow the English rule, there seems good reason for a liberal interpretation of pleadings in actions of this kind, when the question of relevancy is involved and such a course is based on good authority. In Pennsylvania it is held that all doubts should be resolved in favor of relevancy. *Kemper v. Fort,* 219 Pa. St. 85, 67 Atl. 991, 13 L. R. A. N. S. 820, 12 Ann. Cas. 1022. In Minnesota the court applies the test: 'Was the allegation so palpably wanting in relation to the subject matter of the controversy that no reasonable man could doubt its irrelevancy and impropriety?' *Burgess v. Turle & Co.* 155 Minn. 479, 193 N. W. 945; *Rolfe v. Noyes Bros. & Cutler, Inc.* 157 Minn. 443, 196 N. W. 481. In Nebraska it is held that on such an inquiry all doubts should be resolved in favor of relevancy and pertinency. *Simon v. London G. & A. Co.* 104 Neb. 524, 177 N. W. 824. In a New York case it was held that if the allegation could possibly be pertinent or material the privilege is absolute. *Chapman v. Dick,* 197 App. Div. 551, 188 N. Y. Supp. 861. See, also, *Carpenter v. Grimes P. P. M. Co.* 19 Idaho, 384, 114 Pac. 42; *Ash v. Zwietusch,* 159 Ill. 455, 42 N. E. 854; *Gosewisch v. Doran,* 161 Cal. 511, 119 Pac. 656."

Counsel for Mrs. Schafer concedes that the allegation contained in paragraph 4 of defendant's answer would be relevant as evidence on the trial, although he argues that it was not relevant to the pleadings. This court considered a similar question in *Adamson v. Raymer* (1896), 94 Wis. 243, 68 N. W. 1000. In that case the plaintiff, who was chief of police in Madison, commenced an action against a newspaper for publication of certain articles alleged to be libelous in that they suggested that he was corrupt, dishonorable, and unfit for office. The newspaper's answer alleged specific

instances of misconduct, including drunkenness while on duty, attempts to embezzle money from the city treasury, assault, etc. The trial court ordered these allegations stricken from the pleadings on grounds that they were irrelevant to the proceedings. This court reversed stating that if the allegations in the answer which were stricken out can properly be received upon the trial (for the purpose of mitigating the plaintiff's damages), they are proper to be pleaded. The *Adamson Case* involved a motion to strike portions of a pleading as irrelevant, and the test of relevancy in such a situation is more stringent than the test for determining relevancy in cases involving alleged libel in connection with a judicial proceeding. *Bussewitz v. Wisconsin Teachers' Asso., supra,* page 125.

The allegation in question charges Mrs. Schafer with an attempt to involve Dr. Suckle in the perpetration of a fraud upon her insurance company, and, under such circumstances, relates to a professional relationship out of which Mrs. Schafer claimed damages for the doctor's negligence. Mrs. Schafer's conduct in this relationship, and its motivation, are material and relevant, especially insofar as they relate to her alleged failure to follow Dr. Suckle's advice and her refusal to co-operate with him.

We determine that the allegation contained in paragraph 4 of Dr. Suckle's answer to the plaintiff's complaint for malpractice was relevant and pertinent to the subject matter upon which the malpractice action was based. Therefore, the allegation was absolutely privileged, and on that basis the judgment is affirmed. In view of our affirmance it becomes unnecessary to consider the question of whether the action was barred by the two-year statute of limitations.

*By the Court.*—Judgment affirmed.

BROWN, C. J., took no part.