**Willard T. DORN, et al., Appellants,**

v.

**John PETERSON, Individually and in his Capacity as an Employee of H & C Electric Supply Company, et al., Respondents.**

No. C8–93–1431.

Court of Appeals of Minnesota.

March 8, 1994.

Michael D. Schwartz, David E. Wandling, Michael D. Schwartz, P.A., Minneapolis, for appellants.

Bailey W. Blethen, Blethen, Gage & Krause, Mankato, for respondents.

Considered and decided by NORTON, P.J., and LANSING and FORSBERG, JJ.

## OPINION

LANSING, Judge.

This appeal raises the question of whether the Minnesota Human Rights Act protects employees seventy years of age and older against discharge based on age. We hold that Minn.Stat. § 363.03, subd. 1(2)(b) (1990) prohibits discharge based on age with no upper age limit, but Minn.Stat. § 363.02, subd. 6 (1990) allows an exemption for a mandatory retirement age to be established by law or by an employer's published retirement policy if it is established consistent with Minn.Stat. § 181.81 (1990). This appeal also requires us to determine whether an employer's submission to the Department of Jobs and Training of reasons for discharge is absolutely or qualifiedly privileged for purposes of a defamation action. We conclude that within the context of the unemployment compensation claim procedure, an employer's statement of reasons for discharge is absolutely privileged.

## FACTS

H & C Electric Supply Company employed Willard Dorn from 1960 to 1991 and John Hoerr from 1980 to 1991. Both employees were discharged in 1991 by John Peterson,

general manager for H & C Electric. At the time of discharge Dorn was seventy-nine years old and Hoerr was seventy-eight years old. H & C Electric did not have a mandatory retirement policy. Peterson stated that Dorn and Hoerr were discharged for deficient performance. Dorn and Hoerr claim that Peterson told them that the discharge was because of their age.

Both Dorn and Hoerr applied for unemployment benefits. Peterson, in response to an inquiry from the Department of Jobs and Training, wrote a letter saying that he had terminated Hoerr so other more qualified employees could advance, that Hoerr's termination had nothing to do with his age, that Hoerr had difficulty using H & C Electric's computer system, and that Hoerr had held his position as buyer because of H & C Electric's prior owners. Peterson wrote a separate letter stating that Dorn was terminated because his productivity had decreased over the past eight to ten years, that Dorn could not provide some services other buyers could, and that he, like Hoerr, had kept his job because of his personal relationship with the prior owners. Audrey Roden, Peterson's secretary, typed the letters, and Bob Stark, H & C Electric's plant manager, knew the letters' contents.

Dorn and Hoerr brought this action claiming (1) age discrimination under Minn.Stat. § 363.03, subd. 1(2)(b) (1990), and (2) defamation based on Peterson's statements to the Department of Jobs and Training. The district court held that Dorn and Hoerr were not protected from age discrimination under the Minnesota Human Rights Act and that Peterson's statements were privileged. The district court entered summary judgment against Dorn and Hoerr and they appeal.

## ISSUES

I. Does Minn.Stat. § 363.03, subd. 1(2)(b) (1990) protect employees seventy years of age or older from discharge based on age?

II. Is an employer's response to a specific inquiry from the Department of Jobs and Training relating to an employee's claim for unemployment benefits protected by absolute or qualified privilege for purposes of a defamation action?

## ANALYSIS

### I

■ The Minnesota Human Rights Act provides that, except when based on a bona fide occupation qualification, it is an unfair employment practice "[f]or an employer * * * because of * * * age * * * to discharge an employee." Minn.Stat. § 363.03, subd. 1(2)(b) (1990). The Act prohibits using a person's age as a basis for an employment decision if the person is over the age of majority. Minn.Stat. § 363.01, subd. 3 (1990). The Act does not provide an upper age limit for its protection against discharge based on age.

H & C Electric argues that chapter 363's uncapped protection against age discrimination conflicts with Minn.Stat. § 181.81 (1990). The specific language which H & C Electric identifies as conflicting states:

**Restriction on mandatory retirement age.** (a) It is unlawful for any private sector employer to refuse to hire or employ, or to discharge, dismiss, reduce in grade or position, or demote any individual on the grounds that the individual has reached an age of less than 70 * * *. Nothing in this section shall prohibit compulsory retirement of employees who have attained 70 years of age or more * * *.

Minn.Stat. § 181.81, subd. 1(a) (1990).

Relying on this language, H & C Electric asserts that the Human Rights Act is not violated when an employer discharges an employee over the age of seventy even if the discharge is based on age.[1] We do not agree with this argument because we believe the Human Rights Act and its limited exemptions restrict permissible discharge for age to

1. H & C Electric cites *Lecy v. Sage Co.*, 460 N.W.2d 102 (Minn.App.), *pet. for rev. denied* (Minn. Oct. 25, 1990), and *Bruss v. Toro Co.*, 427 N.W.2d 17 (Minn.App.1988) as consistent with its argument that employees over seventy are not protected from discharge based on age. Neither case involved an individual who had reached the age of seventy and neither case specifically addressed the issue raised by Dorn and Hoerr.

mandatory retirement ages established by law or a published retirement policy. *See* Minn.Stat. § 645.19 (1990) (exceptions expressed in a law shall be construed to exclude all others). We also believe that section 181.81 can be read consistently with this interpretation.

Since 1977 the Human Rights Act has provided a specific exemption for mandatory retirement laws or policies. *See* 1977 Minn. Laws ch. 351, § 3. The current language of that exemption states:

Subd. 6. *Age.* By law or published retirement policy, a mandatory retirement age may be established without being a violation of this chapter *if it is established consistent with section 181.81.*

Minn.Stat. § 363.02, subd. 6 (1990). At the same time that the legislature enacted Minn. Stat. § 181.81, it also amended Minn.Stat. § 363.02, subd. 6 to include the emphasized language. 1978 Minn. Laws ch. 649, §§ 2, 4.

The contemporaneous enactment of section 181.81 and the amendment to subdivision 6 shows that, at least with respect to actions brought under chapter 363, section 181.81 provides a restriction on the types of mandatory retirement policies or laws which will qualify as an exemption to chapter 363. *See People for Envtl. Enlightenment and Responsibility v. Minnesota Envtl. Quality Council,* 266 N.W.2d 858, 866 (Minn.1978) (court presumes lawmaking body acts with full knowledge of existing law on the same subject and that new statutes will harmonize, not conflict, with existing laws).

Section 181.81 can be read consistently with chapter 363 to provide the standard by which a mandatory retirement age, established by law or published retirement policy, can be measured to determine whether the law or published policy falls within the Minn. Stat. § 363.02, subd. 6 exemption. For purposes of an action under chapter 363, we believe that the enactment history resolves any apparent conflict between Minn.Stat. § 363.01, subd. 3 and Minn.Stat. § 181.81.

Even if we accepted H & C Electric's argument that section 181.81 conflicts with chapter 363, section 181.81 itself contains a provision which resolves any conflict in this particular action. Minn.Stat. § 181.81, subd. 2(c) states that, when an action is brought alleging a violation of chapter 363, the *plaintiff* may also allege a violation of section 181.81. When a plaintiff alleges the additional violation, the substantive requirements of section 181.81 are incorporated into chapter 363. Minn.Stat. § 181.81, subd. 2(c).

Dorn and Hoerr allege a violation of chapter 363, but not of section 181.81. Consequently, the plain reading of section 181.81 excludes its application in this litigation. Although H & C Electric asserts section 181.81 as an affirmative defense, section 181.81 restricts its substantive integration to actions in which a *plaintiff* makes the additional claim.

A statutory restriction limiting a remedy to one party may be unusual, but there is no indication that restricting the substantive integration to a plaintiff's claim is an oversight or otherwise at odds with the purpose of the statute. *See Wegener v. Commissioner of Rev.,* 505 N.W.2d 612, 614–15, 617 (Minn. 1993) (rejecting plain language only when it leads to absurd or unreasonable results which utterly depart from the purpose of the statute). On the contrary the technical nature of section 181.81's subject matter and its apparent remedial purposes weigh in favor of a literal application of its language.

H & C Electric identifies no other statutory provision that creates a mandatory retirement age for Dorn and Hoerr and it admits that it had not established or published any mandatory retirement policy. Therefore, the section 363.02, subdivision 6 exemption from the Human Rights Act for mandatory retirement age does not apply and Dorn and Hoerr are permitted to bring their action for age discrimination.

H & C Electric points out that this interpretation results in a counterproductive rule that penalizes businesses that retain employees after they reach the age of seventy and forces businesses to establish a general retirement age that eliminates productive individuals from the work force. This reasoning may be sound, but our function in construing statutory language is limited to what legislation means, not whether it is wise.

## II

■ The allegations of defamation are based on the two letters that H & C Electric's general manager, John Peterson, wrote to the Department of Jobs and Training. The letters were in response to a specific request from the department. *See* Minn. Stat. § 268.10, subd. 1(b) (1990); *see also* Minn.R. 3310.2700, subp. 2 (1989) (employer shall provide the reasons for employee separation).

■ A communication is absolutely privileged if it is published in the due course of a judicial proceeding and is pertinent and relevant to that proceeding. *See Matthis v. Kennedy,* 243 Minn. 219, 227–28, 67 N.W.2d 413, 419 (1954). Minnesota law extends the protections of absolute privilege for judicial proceedings to statements made in quasi-judicial proceedings. *Bauer v. State,* 511 N.W.2d 447 (Minn.1994); *Jenson v. Olson,* 273 Minn. 390, 392–93, 141 N.W.2d 488, 490 (1966) (absolute privilege applied to statements made at civil service hearing). Absolute privilege provides complete immunity for publication of allegedly false and defamatory statements regardless of the actor's intent. *Matthis,* 243 Minn. at 224, 67 N.W.2d at 417.

The statement of the employer's position in an unemployment compensation proceeding is an informal equivalent to a pleading or answer in a quasi-judicial proceeding. *See Jeffers v. Convoy Co.,* 650 F.Supp. 315, 317 (D.Minn.1986) (listing attributes of unemployment compensation proceeding that make it quasi-judicial). It is necessary to the proper administration of unemployment compensation that employers answer the requests fully and without fear of defamation actions. *See Yeitrakis v. Schering–Plough Corp.,* 804 F.Supp. 238, 249 (D.N.M.1992) (publication to commission of reasons for discharge absolutely privileged); *Van Amerongen v. Chief Indus.,* 635 F.Supp. 1200, 1201–1202 (N.D.Ill.1986) (same); *Petyan v. Ellis,* 200 Conn. 243, 510 A.2d 1337, 1339, 1341 (1986) (same). *But see Gordon v. Tenneco Retail Serv.,* 666 F.Supp. 908, 912 (N.D.Miss. 1987) (publication to commission of reasons for discharge qualifiedly privileged); *Sugarman v. RCA Corp.,* 639 F.Supp. 780, 787 (M.D.Pa.1985) (same). The employee's interests are protected, at least to some extent, by the opportunity to be heard and to dispute the employer's statements. *See* Minn.Stat. § 268.10, subd. 3 (1990).

Peterson's statements were material and pertinent to the unemployment compensation hearing. The information in Peterson's letters stated his grounds for discharging Dorn and Hoerr, and the scope of the statements does not exceed what would be relevant to making a determination on benefits. *See* Minn.Stat. § 268.09, subd. 1(a), (b), (d) (1990) (identifying grounds for disqualification of benefits); *see also Jenson,* 273 Minn. at 393, 141 N.W.2d at 490 (all doubts must be resolved in favor of finding statements pertinent).

In addition, the response at issue is required by statute. *See* Minn.Stat. § 268.10, subd. 1(b). We have previously held that a public employer has an absolute privilege to disclose the reasons for an employee's discharge to the Department of Economic Security. *McIntire v. State,* 458 N.W.2d 714, 720 (Minn.App.), *pet. for rev. denied* (Minn. Sept. 28, 1990). There is no reason to distinguish between a private or public employer in determining whether a privilege arises from a statutory duty. We conclude that absolute immunity applies both because Peterson made the statements in the course of a quasi-judicial proceeding and the response was requested by statute.

■ We likewise hold that a publication that is part of an absolutely privileged response is also privileged. Roden, Peterson's secretary, who typed the letters, served as the channel for transmitting the material to the Department, and Stark, the plant manager, assisted in putting the letters together. These communications took place within the scope of their employment and are protected by privilege. *See Frankson v. Design Space Int'l,* 394 N.W.2d 140, 144 (Minn.1986); *see also McBride v. Sears, Roebuck & Co.,* 306 Minn. 93, 98–99, 235 N.W.2d 371, 375 (1975) (communication of suspicion to employees investigating alleged misconduct was privileged); Restatement (Second) of Torts § 577 cmt. h (dictation to secretary may be privileged), cmt. i (communication from one agent

to another agent of same principal may be privileged).

■ Cases addressing intracorporate privilege generally have considered the privilege a qualified one. *See, e.g., Frankson,* 394 N.W.2d at 144 (distribution of letter to personnel file and to two officers qualifiedly privileged); *Wirig v. Kinney Shoe Corp.,* 461 N.W.2d 374, 379–80 (Minn.1990) (statements at meeting of employees about theft allegations against an employee qualifiedly privileged). These cases are dissimilar to our circumstances, however, because they do not involve intracorporate publication that is part of an absolutely privileged publication. It is logical that the scope of the execution of an absolute privilege should include the means to accomplish it. *See, e.g., Daywalt v. Montgomery Hosp.,* 393 Pa.Super. 118, 573 A.2d 1116, 1118 (Ct.1990); *Brody v. Montalbano,* 87 Cal.App.3d 725, 151 Cal.Rptr. 206, 212–13 (Ct.1978), *cert. denied,* 444 U.S. 844, 100 S.Ct. 87, 62 L.Ed.2d 57 (1979).

Even if the publication to Roden and Stark was only qualifiedly privileged, the evidence is insufficient to present a fact question on malice which would overcome the privilege. Dorn's and Hoerr's claims of malice are based only on a subjective assessment that Peterson did not like them. They offer no statement or evidence aside from the letters to support their claims for malice. *See Bauer,* at 450 (when a communication is privileged, the law will not infer malice from the communication itself even if it is false). As a matter of law, the intracorporate publication was privileged, and the district court properly granted summary judgment against Dorn and Hoerr on their defamation action.

### DECISION

Employees seventy years of age or older are protected under Minn.Stat. § 363.03, subd. 1(2)(b) from discharge based on age but may be subject to a properly created mandatory retirement policy established consistent with Minn.Stat. § 181.81. The alleged defamatory statements, made in the course of a quasi-judicial proceeding and required by statute, were absolutely privileged. The intracorporate publication necessary to accomplish the communication was also privileged.

**Affirmed in part and reversed in part.**