MAHONEY & HAGBERG, a Professional Association, n/k/a Mahoney & Emerson, a Professional Association, and Mahoney & Emerson, Ltd., Respondent,

v.

Tracy L. NEWGARD, Appellant,

Sean A. Shiff, et al., Defendants.

No. A05–1523.

Court of Appeals of Minnesota.

April 11, 2006.

Michael C. Mahoney, Thomas A. Foster, Mahoney & Foster, Ltd., Wayzata, MN, for respondent.

Michael J. Ford, Heidi N. Thoennes, Quinlivan & Hughes, St. Cloud, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge, KLAPHAKE, Judge, and HUDSON, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Tracy L. Newgard, a legal assistant, was sued by respondent law firm Mahoney & Hagberg, P.A., for breach of confidences, invasion of privacy, civil conspiracy, and money owed, after she submitted an affidavit in a separate lawsuit involving a dispute between two shareholders of her former employer, Professional Administration, LLC (PAL), a company that provided legal assistants to work in respondent's office. Appellant challenges the district court's order denying her motion to dismiss on the grounds of judicial immunity. We affirm in part and reverse in part.

## FACTS

Appellant was assigned to work as a legal assistant in respondent's law firm by her employer PAL from June 1999 to February 2003. During her employment, appellant worked primarily for Steven V. Hagberg, a principal in the firm. According to appellant, she was dismissed from her employment with PAL because PAL could not afford to pay her. She eventually pursued an action against PAL for unpaid wages and now has an unsatisfied judgment against it totaling $6,837.41. Appellant admits that on April 19, 2003, Hagberg paid her $2,000 as a loan on behalf of respondent, to be repaid when she received her back wages from PAL.

PAL was preceded in interest by Professional Administration Corporation (PAC). After PAC was inadvertently dissolved in 2000 for failure to register as a corporation, the same parties formed PAL, although they dispute the ownership interests in PAL. PAC was initially formed by Stephanie Boldt, Hagberg's daughter, and Margaret Burns, the daughter of Michael Mahoney, another principal in respondent's firm. Gina Miller also claims that she is an owner of PAL. Mahoney and Hagberg ceased being law partners in

2003, and the firm is now known as Mahoney and Emerson, PA.

PAL had a contract with respondent, drafted by Mahoney, to provide office support services to the firm in exchange for 25 percent of respondent's revenues. Respondent argues that the contract, if enforceable, was for a duration of one year only, but some PAC shareholders argue that they operated under the contract for almost ten years.

Boldt initiated an action against other PAL shareholders and respondent, claiming that they owed her a share of a $9 million jury verdict that respondent won and that other shareholders had improperly forced her out of the business. Boldt's attorney, Sean Shiff, contacted appellant regarding this action and, according to appellant, told her that if she did not provide an affidavit she would be subpoenaed and deposed on the same information.

Appellant then executed an affidavit that set forth her duties while she was employed by PAL, including her work at respondent's firm. The affidavit outlined her understanding of the ownership interests in PAL, the fee-splitting agreement between respondent and PAL, and her failure to be paid by PAL. It also set forth details of claimed improper and possibly illegal conduct by Mahoney with regard to two clients' businesses, as well as his attempt to gain appellant's assistance in some of that conduct. With regard to one client, appellant's affidavit stated, as follows:

> Mahoney told me he created approximately 50 companies for one of his clients who wanted to use the companies as a means to funnel money through in order to avoid paying so much money in taxes. Mahoney told me to incorporate these companies for him. I told him that I was concerned about this, since I did not want to be the Incorporator, and

> I knew nothing about the same. He told me that my name would only be listed as the Incorporator until the Articles of Incorporation were formed, at which time, my name would be replaced by the Officers of the companies. So, I incorporated the companies, relying on Mahoney's experience and knowledge. Mahoney then asked me if I would call the IRS and say that I was an officer of these companies. However, I felt very uncomfortable with Mahoney's request and I told him that I could not lie to the IRS, as I was not an officer of the companies. That made him very angry with me, and his face turned bright red and he started yelling at me because I would not do what he asked of me. Because I would not do this, Mahoney, Burns, and Miller then had to make several phone calls to the IRS and state that they were officers of the companies in order to get federal identification numbers for all of the companies because they needed the numbers by that afternoon.

In response to the affidavit, respondent sued appellant for breach of confidences, invasion of privacy, civil conspiracy, and money owed. Appellant moved to dismiss, claiming that she was "absolutely immune" from suit because her affidavit contained privileged information published in the due course of a judicial proceeding. Appellant challenges the district court's denial of her motion to dismiss.

## ISSUE

Is appellant immune from suit under the doctrine of judicial immunity for information she revealed as a witness during the pendency of a judicial proceeding?

## ANALYSIS

 The district court implicitly rejected appellant's claim of immunity. An

appellate court may decide an issue not determined by the district court where the question is determinative of the entire controversy and neither party is prejudiced by the lack of a prior ruling, as in the instance of undisputed facts. *Harms v. Ind. Sch. Dist. No. 300,* 450 N.W.2d 571, 577 (Minn. 1990). Whether immunity applies is a legal question subject to de novo review. *Gleason v. Metro. Council Transit Operations,* 582 N.W.2d 216, 219 (Minn.1998). The party claiming immunity bears the burden of proof. *Rehn v. Fischley,* 557 N.W.2d 328, 333 (Minn.1997).

██ Judicial immunity is a fundamental principle of American jurisprudence derived from the English common law. *Hoppe v. Klapperich,* 224 Minn. 224, 233–34, 28 N.W.2d 780, 787 (1947). "[A] party who files a pleading or affidavit in a judicial proceeding has absolute immunity, though his statements are defamatory and malicious, if they relate to the subject of inquiry." *Matthis v. Kennedy,* 243 Minn. 219, 227–28, 67 N.W.2d 413, 419 (1954) (quotation omitted). The absolute immunity of witnesses and parties from claims for damages arising out of their trial testimony is premised on public policy concerns that favor "ascertainment of truth" over self-censorship that may result from witnesses' "fear of subsequent liability." *Briscoe v. LaHue,* 460 U.S. 325, 333, 103 S.Ct. 1108, 1114, 75 L.Ed.2d 96 (1983) (citations omitted).

██ Judicial immunity is specifically offered to witnesses as well as to other participants in the judicial process, such as judges, prosecutors, or other persons appointed by the court, because "[b]oth types of witness [take] the stand and testif[y] under oath in response to the questions of counsel. Both might be deterred by the prospect of subsequent, vexatious litigation." *Id.* at 336 n. 15, 103 S.Ct. at 1116 n. 15; *see Matthis,* 243 Minn. at 224, 67

N.W.2d at 417 (absolute immunity protection extends to judge, jury, parties, counsel, and witnesses). In the same way that trial testimony is privileged, pretrial publications are also absolutely privileged. *Pinto v. Internationale Set, Inc.,* 650 F.Supp. 306, 308 (D.Minn.1986). As a limitation on the privilege, however, the statement at issue must have some relation to or connection with an issue in the case, although that connection need not amount to legal relevance. *Matthis,* 243 Minn. at 224–25, 67 N.W.2d at 417–18.

██ Respondent claims that judicial immunity applies only to defamation claims. Traditionally, judicial immunity has applied to protect participants in the judicial process against claims of defamation. *Prosser and Keeton on Torts* § 114, at 816–17 (W. Page Keeton, et al. eds., 5th ed.1984). "[D]efamatory matter published in the due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation[.]" *Matthis,* 243 Minn. at 224, 67 N.W.2d at 417. In Minnesota, nearly all assertions of judicial immunity involve underlying claims for defamation. *See, e.g., id.,* 243 Minn. at 223, 67 N.W.2d at 417; *Freier v. Indep. Sch. Dist. No. 197,* 356 N.W.2d 724, 728 (Minn.App.1984).

██ Even if the claim is not for defamation, if it sounds in defamation, absolute immunity applies. The judicial immunity "rule is not to be 'scuttled' by pleadings which allege that the wrongful acts resulted from a conspiracy" rather than from defamation. *Jenson v. Olson,* 273 Minn. 390, 394, 141 N.W.2d 488, 490–91 (1966); *see Zagaros v. Erickson,* 558 N.W.2d 516, 523 (Minn.App.1997) (cause of action for negligent testimony and defamation are "so intertwined . . . that it would be unfair, and probably impossible, to expect a jury to distinguish between the two"; psycholo-

gist held to be absolutely immune for trial testimony regarding possible misdiagnosis of one of the parties), *review denied* (Minn. Apr. 17, 1997).

 While no published Minnesota case has applied judicial immunity to protect participants in the judicial process from other types of tort claims stemming from their communications, other jurisdictions that have considered this issue have applied it to a broader range of tortious acts, such as perjury or intentional infliction of emotional distress, and some jurisdictions even apply it to all torts. *See, e.g., Darragh v. Super. Ct.*, 183 Ariz. 79, 900 P.2d 1215, 1217–18 (1995) (judicial immunity applied against RICO claims for perjured testimony and other claims related to witness trial and deposition testimony); *Silberg v. Anderson*, 50 Cal.3d 205, 266 Cal.Rptr. 638, 786 P.2d 365, 371 (1990) (in accordance with California civil code, communications made in judicial proceedings subject to immunity from all torts); *Kelley v. Bonney*, 221 Conn. 549, 606 A.2d 693, 705 n. 15 (1992) (where other tort claims founded upon same conduct as defamation claims, absolute privilege bars recovery on both types of claims); *Levin, Middlebrooks, Mabie Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d 606, 608 (Fla.1994) (judicial immunity applied to "any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior"); *Bird v. W.C.W.*, 868 S.W.2d 767, 771–72 (Tex.1994) (privilege extended beyond defamation to cover negligent misdiagnosis claim where essence of claim was that witness' communications in judicial proceeding caused damages); *Price v. Armour*, 949 P.2d 1251, 1258 (Utah 1997) (privilege extended to claims of libel and intentional interference with business relations). The public policy reasons for applying judicial immu-

nity to defamatory communications also apply with equal force to other torts that arise from a person's participation in the judicial process—it is in the public welfare to encourage participants to communicate freely in judicial proceedings.

 In this case, respondent has alleged one cause of action to which immunity clearly does not apply, money owed. This claim arises out of Hagberg's loan of $2,000 to appellant and has no relation to the facts set forth in appellant's affidavit. Therefore, judicial immunity does not insulate appellant from suit on this claim.

 The claims of breach of confidences, invasion of privacy, and civil conspiracy, however, all arise out of the communications contained in appellant's affidavit and are the sort of claims to which judicial immunity should apply. With regard to the invasion of privacy claim, respondent alleges that appellant's sharing of confidential information "placed it in a false and defaming position in the public." This is essentially a defamation claim. The civil conspiracy claim states that the purpose of the conspiracy was "the complete destruction and loss of any value of the Law Firm," and the breach of confidences claim also suggests that appellant improperly shared private information which she should have kept confidential, to respondent's detriment. These claims, broadly interpreted, arise only from appellant's allegedly defamatory statements contained in her affidavit. As such, they are protected under the judicial immunity doctrine.

 Respondent claims that appellant's affidavit reveals confidential communications that are subject to the attorney-client privilege, which itself is supported by public policy rationales that are as compelling as the public poli-

cy arguments supporting the judicial immunity rule. *See Prior Lake Am. v. Mader,* 642 N.W.2d 729, 738–39 (Minn. 2002) (attorney-client privilege exists to encourage client to confide openly with attorney and to enable attorney to act more effectively on client's behalf). While there is an exception to the attorney-client privilege where a client consults with an attorney to further a crime or commit fraud, it is unclear whether that exception would apply to the alleged dealings between Mahoney and his clients that were referenced in appellant's affidavit. *See State ex rel. Humphrey v. Philip Morris, Inc.,* 606 N.W.2d 676, 696 (Minn.App.2000), *review denied* (Minn. Apr. 25, 2000); *see also* Minn. R. Prof. Conduct 1.2(d) (prohibiting attorney from counseling client to engage in criminal or fraudulent conduct). In any case, however, the potential harm that may result from the absolute immunity of affiants such as appellant is ameliorated by the comprehensive control of the district court over judicial proceedings, including its ability to seal the record, if necessary. Historically, the judicial immunity rule recognizes that possible harm to one individual must be borne to protect the integrity of the judicial process. *See Matthis,* 243 Minn. at 223, 67 N.W.2d at 417 (judicial immunity rule allows "complete immunity from being called to account for language used" to promote "the public welfare"). For these reasons, appellant's claim of judicial immunity should not be lost because some of the information she revealed might have been subject to the attorney-client privilege.

## DECISION

Because the substance of appellant's statements contained in her affidavit was the source of respondent's tort claims for breach of confidences, invasion of privacy, and conspiracy, we hold that judicial immunity applies to appellant for those claims and reverse the district court's denial of appellant's motion to dismiss. We affirm the district court's denial of appellant's motion to dismiss respondent's claim for money owed.

**Affirmed in part and reversed in part.**