643 N.W.2d 333 (2002)
CHURCHILL ENVIRONMENTAL AND INDUSTRIAL EQUITY PARTNERS, L.P., et al., Respondents,
v.
ERNST & YOUNG, L.L.P., Appellant.
No. C7-01-1905.
Court of Appeals of Minnesota.
April 30, 2002.
*334 James P. McCarthy, Terrence J. Fleming, Michael Olafson, Lindquist & Vennum, PLLP, Minneapolis, MN, for respondents.
Timothy D. Kelly, Jennifer L. Frisch, Kelly & Berens, P.A., Minneapolis, MN; and Jonathan C. Medow, Brian J. Massengill, Jeffrey W. Sarles, Mayer, Brown, Rowe & Maw, Chicago, IL, for appellant.
Considered and decided by SHUMAKER, Presiding Judge, FOLEY, Judge, and HUSPENI, Judge.[*]

OPINION
FOLEY, Judge.
Appellant challenges the district court's order denying its motion to stay proceedings and compel arbitration, arguing that the parties agreed to arbitrate both the merits of respondents' claims and the parties' threshold dispute regarding arbitrability of those claims. Because we conclude that the parties clearly intended to arbitrate the arbitrability of respondents' claims, we reverse and remand.

FACTS
Appellant Ernst & Young (E & Y) served as the independent auditor for Asche Transportation Services, Inc. (ATS), a trucking company. In that capacity, E & Y issued audit reports on ATS's year-end financial statements for 1995-98. Each year's report contained an unqualified opinion regarding ATS's financial condition, stating that E & Y had audited the company's year-end financial statements and that, in E & Y's opinion, the financial statements presented "fairly, in all material respects, the consolidated financial position" of ATS in conformance with generally accepted accounting principles.
*335 In 1999, respondents Churchill Environmental and Industrial Equity Partners, L.P., Churchill Capital Environmental, L.L.C., and Churchill Capital, Inc. (collectively Churchill) hired E & Y to provide due-diligence services for Churchill's planned purchase of ATS stock. E & Y provided Churchill with the due-diligence services under the terms of an engagement letter that contained two dispute resolution clauses. The first clause provided:
Any controversy or claim arising out of or relating to the [due-diligence] services covered by this letter or hereafter * * * shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Appendix C to this letter.
The second clause, set forth in Appendix C and incorporated in the parties' letter agreement by reference, provided:
Any issue concerning the extent to which any dispute is subject to arbitration or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators.
After E & Y had issued its unqualified opinion regarding ATS's 1998 financial statements, Churchill purchased 31% of ATS's common stock for $12 million. A few months later, ATS discovered accounting irregularities in its books. An investigation revealed that ATS officers and directors had been defrauding the company for some time. In April 2000, E & Y warned investors that they could no longer rely on ATS's financial statements or audit reports that E & Y had issued regarding those statements. NASDAQ halted trading in ATS stock and, in June 2000, delisted the company. ATS and two of its subsidiaries subsequently filed for bankruptcy.
Churchill sued E & Y for negligent misrepresentation, common-law fraud, and Minnesota securities-law violations, contending that it lost its entire investment in ATS because it relied on E & Y's representations regarding ATS's financial condition. E & Y filed a motion to stay the proceedings and to compel arbitration, arguing that the parties had agreed to arbitrate both the merits of Churchill's claims and any disputes regarding the arbitrability of those claims. The district court denied E & Y's motion, holding that the court properly determines arbitrability and that Churchill's audit-based claims fell outside the scope of the parties' agreement to arbitrate disputes "arising out of or relating to" the due-diligence services. This appeal followed.

ISSUE
Did the district court err when it denied E & Y's motion to stay the proceedings and compel arbitration?

ANALYSIS
The Federal Arbitration Act (FAA) and Minnesota law authorize this appeal of the district court's order denying E & Y's motion to stay the proceedings and compel Churchill to arbitrate. 9 U.S.C. § 16 (2000); Minn.Stat. § 572.26 (2000). "Whether or not a party has agreed to arbitrate a particular dispute is a matter of contract interpretation, which this court reviews de novo." Stiglich Constr., Inc. v. Larson, 621 N.W.2d 801, 802 (Minn.App. 2001) (citation omitted), review denied (Minn. Mar. 27, 2001).

I.
The FAA creates "a body of federal substantive law * * * applicable to *336 any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The FAA governs the arbitrability of interstate transactions, regardless of whether the plaintiff asserts federal or state law claims; it preempts conflicting state law. Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 474-79, 109 S.Ct. 1248, 1253-56, 103 L.Ed.2d 488 (1989); Southland Corp. v. Keating, 465 U.S. 1, 10-16, 104 S.Ct. 852, 858-61, 79 L.Ed.2d 1 (1984). The parties agree that the FAA applies here.
Federal and Minnesota law favor arbitration as an alternative to litigation. Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. at 941; Minn. Teamsters Pub. & Law Enforcement Employees' Union, Local No. 320 v. County of St. Louis, 611 N.W.2d 355, 358 (Minn.App.2000). Under the FAA and Minnesota law, a court must stay the proceedings and compel arbitration of claims subject to arbitration under a valid agreement. 9 U.S.C. § 3 (2000); Minn.Stat. § 572.09 (2000). E & Y contends that, as a threshold issue, the parties agreed to arbitrate any disputes regarding the arbitrability of Churchill's claims and that, therefore, the district court erred when it denied E & Y's motion to stay proceedings and compel arbitration.
Churchill argues that the court, not an arbitrator, decides arbitrability. Churchill contends that the terms of the engagement letter obligate it to arbitrate only those claims "arising out of or relating to" the due-diligence services. Because its claims relate to the audit work that E & Y performed for ATS and not the due-diligence services, Churchill continues, no valid arbitration agreement exists between the parties.
"[A]rbitration under the [FAA] is a matter of consent, not coercion," and therefore a party can be required to arbitrate only those disputes that it agreed to submit to arbitration. AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 242 F.3d 777, 780, 782 (8th Cir.2001) (quotation omitted).
If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate * * *.
Minn. Fed'n of Teachers, Local 331 v. Indep. Sch. Dist. No. 361, 310 N.W.2d 482, 484 (Minn.1981) (quotations omitted); see First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945, 115 S.Ct. 1920, 1925, 131 L.Ed.2d 985 (1995). But when a valid arbitration agreement exists, any doubts regarding the scope of arbitrable issues must be resolved in favor of arbitration. Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. at 941.
This case ultimately requires the resolution of three distinct issues: (1) whether E & Y is liable to Churchill for negligent misrepresentation, common-law fraud, and Minnesota securities-law violations; (2) whether the parties agreed to arbitrate the merits of Churchill's claims; and (3) whether the parties agreed that an arbitrator would decide whether the parties agreed to arbitrate the merits of Churchill's claims, that is, whether the parties agreed to arbitrate arbitrability. If a valid agreement to arbitrate arbitrability exists between the parties, the district court had no power to determine the second issue, that Churchill's audit-based claims fell outside the scope of the parties' agreement to arbitrate "[a]ny controversy or claim arising out of or relating to" the due-diligence services.
*337 "The question of whether a dispute between the parties is covered by [an] arbitration agreement is for the courts to decide." Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 63 (2d Cir.1983) (citations omitted). When determining whether parties agreed to arbitrate an issue, the court analyzes whether a valid arbitration agreement exists and, if so, whether the dispute falls within the scope of the agreement. Amdahl v. Green Giant Co., 497 N.W.2d 319, 322 (Minn.App.1993). In making that determination, courts generally apply state law principles that govern contract formation, to ascertain the parties' intent. First Options, 514 U.S. at 944, 115 S.Ct. at 1924.
In Atcas v. Credit Clearing Corp. of Am., the Minnesota Supreme Court set forth guidelines for a court to use to determine who should determine whether the parties intended to arbitrate a dispute:
(1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court.
(2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators * * *. (3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate.
292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972). To determine the scope of an arbitration clause, a court examines the language of the agreement. Minn. Teamsters, 611 N.W.2d at 359.
When a party moves to compel arbitration, the court is limited to determining whether an arbitration agreement exists and, if so, whether the dispute falls within the scope of that agreement. Local 1119, AFSCME v. Mesabi Reg'l Med. Ctr., 463 N.W.2d 290, 296 (Minn.App.1990). A court cannot refuse to compel arbitration of a claim because that claim lacks merit or because the parties have not shown fault or grounds for the claim. Minn.Stat. § 572.09(e). If an arbitration agreement exists that governs the dispute, the court must compel the parties to arbitrate. Minn.Stat. § 572.09(a).
Here, it is patently clear that the parties intended to arbitrate the arbitrability of Churchill's claims. Churchill does not dispute the terms of the engagement letter. Although the first dispute resolution clause in that letter limits its scope to the arbitration of "[a]ny controversy or claim arising out of or relating to" the due-diligence services, the second clause in Exhibit C, incorporated into the letter agreement by reference, requires arbitration of "[a]ny issue concerning the extent to which any dispute is subject to arbitration or concerning the applicability, interpretation, or enforceability of these procedures." (Emphasis added.) Churchill disputes whether the first clause applies to its audit-based claims; therefore, its dispute falls squarely within the scope of the second clause.
Consequently, the district court unnecessarily analyzed whether Churchill's audit-based claims fell within the scope of the parties' agreement to arbitrate claims "arising out of or relating to" the due-diligence services. See Minn.Stat. § 572.09(e). The parties agreed that arbitrators would decide that issue. Because arbitrators will decide the issue, we express no opinion regarding whether Churchill's claims are governed by, or fall within the scope of, its agreement to arbitrate claims "arising out of or relating to" the due-diligence services.

*338 DECISION
The parties' agreement to arbitrate "[a]ny issue concerning the extent to which any dispute is subject to arbitration" shows that they clearly intended that arbitrators would decide the arbitrability of respondents' claims. We reverse and remand with instructions for the district court to compel arbitration.
Reversed and remanded.
NOTES
[*] Retired judges of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.