MAHONEY & HAGBERG, a Professional Association, n/k/a Mahoney & Emerson, a Professional Association, and Mahoney & Emerson, Ltd., Appellant,

v.

Tracy L. NEWGARD, Respondent,

Sean A. Shiff, et al., Defendants.

No. A05–1523.

Supreme Court of Minnesota.

March 29, 2007.

Michael C. Mahoney, Mahoney & Foster, Ltd., Wayzata, MN, for Appellant.

Michael J. Ford, Heidi N. Thoennes, Quinlivan & Hughes, P.A., St. Cloud, MN, for Respondent.

## OPINION

MEYER, Justice.

The law firm of appellant Mahoney & Hagberg seeks reversal of an opinion of the court of appeals affirming the dismissal of appellant's claims against respondent Tracy Newgard, one of its former secretaries, for breach of confidentiality. At issue is whether Newgard's revelations, made in an affidavit in litigation brought by a third party against the law firm, are encompassed by absolute privilege. We affirm the decision of the court of appeals.

Stephanie Boldt, daughter of Stephen Hagberg, and Margaret Burns, daughter of Michael Mahoney, formed Professional Administration Corporation (PAC) to provide secretarial support for their fathers' law firm, appellant Mahoney & Hagberg. PAC was administratively dissolved in 2000, and Boldt, Burns, and a third individual, Gina Miller, then formed Professional Administration, LLC (PAL) to provide the same services to appellant. PAL's contract with Mahoney & Hagberg called for PAL to receive 25% of the firm's revenues. After Mahoney & Hagberg won a $9 million verdict, Stephanie Boldt sued Burns, PAC, and PAL for her share, claiming she had been improperly forced out of PAL.

Newgard had worked, under the auspices of PAC and PAL, for the law firm from June 1999 to February 2003, and had a judgment against PAL for unpaid wages of nearly $7,000. In addition, while at the firm Newgard had worked primarily for Steven Hagberg, who had since left the firm in a dispute with attorney Mahoney.

This lawsuit arises from statements made by Newgard in an affidavit executed and filed as part of the lawsuit between Boldt and her former business partner, Burns. After Boldt's complaint was filed in the *Boldt v. Burns* litigation, Boldt's attorney drafted an affidavit signed by Tracy Newgard. When Boldt's attorney obtained the affidavit, he informed Newgard that if she did not voluntarily speak with him, she would be deposed and be ordered to disclose the same information.

Newgard decided to provide an affidavit in which she discussed her understanding of the organizational structure of PAC and PAL, actions taken by Michael Mahoney on behalf of Mahoney & Hagberg clients, and names of firm clients. She alleged improper and possibly illegal conduct on the part of Michael Mahoney and others in the firm. For example, Newgard averred that attorney Mahoney had told her he had created "approximately 50" companies for one of his clients "as a means to funnel money through in order to avoid paying so much money in taxes." Newgard said Mahoney had asked her to incorporate the companies, and that she had done so only on Mahoney's assurances that she would be replaced by the officers of the compa-

nies once the articles of incorporation were filed. Newgard averred that Mahoney then asked her to call the IRS and say she was an officer of the companies, apparently in order to get tax identification numbers for the companies. Newgard averred that when she refused, Mahoney and other lawyers in the firm called the IRS and lied about being officers of the companies in order to get the required tax numbers. Newgard also averred that she had overheard attorney Mahoney advising a client (specifically named in the affidavit) to transfer some of her personal debts to her corporation in order to improve her credit score and thereby qualify for a mortgage. Finally, Newgard averred that attorney Mahoney had transferred ownership of a travel agency to that same client, without the knowledge or approval of its owners.

Mahoney & Hagberg, n/k/a Mahoney & Emerson, Professional Association, and Mahoney & Emerson, Ltd. (collectively "appellant") sued Newgard claiming her affidavit was a breach of client and firm confidences, a breach of fiduciary duty, an invasion of privacy and a civil conspiracy, and seeking injunctive relief and damages.[1] Appellant alleged that Newgard was conspiring with attorney Hagberg "to do as much harm and damage as possible" to appellant. Newgard filed a motion to dismiss, claiming that she was immune from suit because her affidavit, which was published in the course of a judicial proceeding, was absolutely privileged.[2] The district court, without addressing Newgard's

absolute privilege claim, denied Newgard's motion to dismiss, on grounds that appellant's complaint adequately stated claims against Newgard.

Newgard appealed the denial of the motion to dismiss, and the court of appeals agreed with her. The court of appeals began its analysis by citing *Matthis v. Kennedy*, 243 Minn. 219, 227–28, 67 N.W.2d 413, 419 (1954), for the general principle that a party who files a pleading or affidavit in a judicial proceeding has absolute immunity, even for statements that are defamatory and malicious, "if they relate to the subject of inquiry." *Mahoney & Hagberg v. Newgard*, 712 N.W.2d 215, 219 (Minn.App.2006). The court of appeals specifically noted that "the statement at issue must have some relation to or connection with an issue in the case, although that connection need not amount to legal relevance." *Id.* The court of appeals noted that virtually all assertions of absolute privilege decided by Minnesota's courts involved claims of defamation. *Id.* No Minnesota court had yet applied absolute privilege to other types of tort claims, but the court of appeals relied on cases from other jurisdictions to hold that petitioner's claims against respondent Newberg were barred to the extent they arose from appellant's participation in the judicial process. *Id.* at 220. The court reversed the district court's denial of Newgard's motion to dismiss because Newgard's statements were relevant to

---

1. The complaint also alleged that Newgard wrongfully obtained $2,000 of the firm's money. The court of appeals concluded that absolute privilege did not apply to the monetary claim, and this issue is not before the court.

2. Newgard actually used the phrase "judicial immunity." However, "absolute privilege and immunity are often used interchangeably * * * but they are different legal concepts and should not be confused. Perhaps the reason

absolute privilege is sometimes referred to as an immunity is because it has the effect of making the publisher of a defamatory statement immune from suit." *Bol v. Cole,* 561 N.W.2d 143, 147 (Minn.1997). Both parties and the court of appeals have utilized the term "judicial immunity" or "witness immunity." *Matthis v. Kennedy,* 243 Minn. 219, 67 N.W.2d 413 (1954), utilizes the term "absolute privilege," and we will refer to it as such.

the proceeding and absolute privilege barred the appellant's suit against Newgard. *Id.* at 221. Appellant sought further relief.

## I.

This case involves an appeal from a motion to dismiss and, therefore, the only issue before this court is whether there is a sufficient legal claim for relief. *See Barton v. Moore,* 558 N.W.2d 746, 749 (Minn.1997). Questions of law are reviewed de novo. *Modrow v. JP Foodservice, Inc.,* 656 N.W.2d 389, 393 (Minn. 2003). An individual claiming absolute privilege bears the burden of proof. *See Rehn v. Fischley,* 557 N.W.2d 328, 333 (Minn. 1997).

Statements, even if defamatory, may be protected by absolute privilege in a defamation lawsuit if the statement is (1) made by a judge, judicial officer, attorney, or witness; (2) made at a judicial or quasi-judicial proceeding; and (3) the statement at issue is relevant to the subject matter of the litigation. *Matthis,* 243 Minn. at 224, 67 N.W.2d at 417. When absolute privilege applies, the speaker is completely shielded from liability for her statements, even statements that are intentionally false or made with malice. *Id.* at 223, 67 N.W.2d at 416. In the context of judicial proceedings, absolute privilege encourages frank testimony by witnesses, by enabling them to testify without fear of civil liability for their statements. *See id.* at 225, 67 N.W.2d at 418; Restatement (Second) of Torts § 588, cmt. a (1977) ("The function of witnesses is of fundamental importance in the administration of justice. The final judgment of the tribunal must be based upon the facts as shown by their testimony, and it is necessary therefore that a full disclosure not be hampered by fear of private suits for defamation."). But the applicability of absolute privilege is limit-

ed. *Matthis,* 243 Minn. at 223, 67 N.W.2d at 417. This court will not apply absolute privilege unless the "administration of justice requires complete immunity from being called to account for language used." *Id.; see also Bol v. Cole,* 561 N.W.2d 143, 149 (Minn.1997) ("For absolute privilege to apply, the public interest served must be one of paramount importance, such that it is entitled to protection even at the expense of failing to compensate harm to the defamed person's reputation.").

Absolute privilege extends to statements published prior to the judicial proceeding, but in order for the privilege to apply, such statements must have some relation to the judicial proceeding. *See Matthis,* 243 Minn. at 226–28, 67 N.W.2d at 418–19; Restatement (Second) of Torts § 586, cmt. a ("The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding."). Voluntary witness testimony given in a deposition or affidavit published prior to a judicial proceeding is also protected by absolute privilege. W. Page Keeton, et al., *Prosser and Keeton on The Law of Torts* § 114, at 816–17 (5th ed.1984).

In the context of absolute privilege, statements may be relevant, and therefore protected, if the statements "have reference and relation to the subject matter of the action and [they are] connected therewith[.] In other words, does it have reference to or relation to or connection with the case before the court?" *Matthis,* 243 Minn. at 225, 67 N.W.2d at 418. The relevance of a statement to litigation is a question of law, and any doubts as to relevance of a statement "must be resolved in favor of finding the statements

pertinent." *Jenson v. Olson,* 273 Minn. 390, 393, 141 N.W.2d 488, 490 (1966).

■ The amended complaint in the *Boldt v. Burns* litigation asserts counts for declaratory relief, breach of contract, breach of fiduciary duty, promissory estoppel, equitable relief under Minn.Stat. § 302A.751 (2006) and Minn.Stat. § 322B.833 (2006), unjust enrichment, and a demand for accounting for both PAC and PAL. The amended complaint makes two references regarding Mahoney's behavior. First, Boldt alleges that "Burns and Miller, aided by Mahoney, prepared and signed revised corporate records for PAL that purport to exclude Boldt as an owner of PAL and give 100% of PAL to Burns and Miller. Upon information and belief, the revised corporate records were backdated to make them appear legitimate." Second, Boldt claims that "Burns' above-described wrongful conduct was at the direction of or in concert with Mahoney, who has a history of engaging in unlawful and unethical conduct that is similar to the conduct complained of herein."

Newgard's affidavit states:

9. With regard to another case that Mahoney was handling about two years ago, Mahoney told me he created approximately 50 companies for one of his clients who wanted to use the companies as a means to funnel money through in order to avoid paying so much money in taxes. Mahoney told me to incorporate these companies for him. I told him that I was concerned about this, since I did not want to be the Incorporator, and I knew nothing about the same. He told me that my name would only be listed as the Incorporator until the Articles of Incorporation were formed, at which time, my name would be replaced by the Officers of the companies. So, I incorporated the companies, relying on Mahoney's experience and knowledge. Maho-

ney then asked me if I would call the IRS and say that I was an officer of these companies. However, I felt very uncomfortable with Mahoney's request and I told him that I could not lie to the IRS, as I was not an officer of the companies. That made him very angry with me, and his face turned bright red and he started yelling at me because I would not do what he asked of me. Because I would not do this, Mahoney, Burns, and Miller then had to make several phone calls to the IRS and state that they were officers of the companies in order to get federal identification numbers for all of the companies because they needed the numbers by that afternoon.

10. * * * Miller stated to me that she was the owner and manager of Shamrock. * * * One time, I heard Miller and Mahoney discussing the fact that Miller had applied, but was turned down, for a home mortgage because she had too much debt. As a result, Miller's credit score was not high enough to qualify. Mahoney suggested a plan to improve Miller's credit score by having Miller transfer some of her personal debt to Shamrock to make it appear as a legitimate business debt and to make it appear that Miller had less personal debt. Mahoney stated that this would make Miller's credit score appear better. I believe that Miller went along with Mahoney's plan and transferred some of her personal debt to Shamrock. Miller then applied and was approved for a mortgage.

Newgard maintains that her entire affidavit was pertinent to and related to the *Boldt v. Burns* litigation. Specifically, Newgard contends that paragraph nine is relevant to Boldt's allegation that Mahoney had encouraged wrongful conduct against her and that Mahoney had a histo-

ry of unlawful and unethical conduct and that paragraph ten is pertinent because it establishes Miller's ownership status in PAL.

Appellant contends that the court of appeals did not examine Newgard's statements in relation to the *Boldt v. Burns* litigation. It argues that eight of the eleven paragraphs in Newgard's affidavit are wholly irrelevant. Specifically, appellant notes that paragraph nine references the formation of corporate entities, and paragraphs ten and eleven discuss individuals and corporations not parties to the *Boldt v. Burns* litigation.

 Absolute privilege is not designed to provide blanket protection for any statement made within the course of litigation. *Matthis* requires that the statement made be relevant in order to receive protection. But we also do not expect nonparty witnesses to understand which of their statements may be relevant to the litigation. Absolute privilege exists to encourage witnesses to engage in open dialogue without the fear of facing civil liability for their acts. *See Bol,* 561 N.W.2d at 148; *Matthis,* 243 Minn. at 225, 67 N.W.2d at 418. Therefore, in the context of absolute privilege, relevance is defined broadly, not limiting the privilege to statements that are "legally relevant" but permitting all statements that have reference, relation, or connection to the case. *Matthis,* 243 Minn. at 225, 67 N.W.2d at 418.

In this case we must determine whether Newgard's statements were relevant to the *Boldt v. Burns* litigation, which was the suit for which Newgard's affidavit was prepared. Paragraphs 38 and 43 of Boldt's complaint allege that Mahoney aided Burns in backdating corporate records and that Burns' wrongful conduct toward Boldt was done at the direction of Mahoney, who had previously engaged in unlawful and unethical conduct. Newgard's statements in paragraphs nine and ten of her affidavit suggest that Mahoney had encouraged Miller to transfer personal debts to a corporation owned by her, incorporated numerous corporations to help a client avoid tax liability, and obtained tax identification numbers without completing the proper paperwork.

As we stated in *Matthis,* we do not determine whether a statement is relevant by asking whether Newgard's statements are "legally relevant." Rather, we look to see if the statement has a connection to the case before the court, keeping in mind that any doubts about the relevance of the statement are resolved in favor of relevancy and pertinency. *Matthis,* 243 Minn. at 225, 67 N.W.2d at 418. We do not need to determine whether these statements are true; we only need to determine if Newgard's statements were related to Boldt's allegations that Mahoney assisted Burns in excluding Boldt from PAC and PAL. Newgard's affidavit suggests that Mahoney may have previously engaged in potentially improper conduct and encouraged or assisted others in doing the same. We disagree with Newgard's contention that paragraph ten of her affidavit is relevant for the purpose of establishing Miller's ownership interest in PAL. Even under the broad standard of relevance utilized in cases of absolute privilege, we do not believe that Miller's actions with regard to Shamrock are relevant for establishing Miller's ownership interest in PAL. But we do conclude that, like paragraph nine of Newgard's affidavit, paragraph ten is relevant to establish that Mahoney may have engaged in unethical and unlawful conduct and that he had assisted Burns in doing the same. Therefore, we conclude that Newgard's statements have reference and relation to the subject matter of the *Boldt v. Burns* litigation and that they are relevant.

## II.

We must next determine if appellant's claims against Newgard are the types of claims barred by absolute privilege. Appellant contends that absolute privilege should not apply in this situation because Newgard breached the attorney-client privilege and the public policy interests in protecting the attorney-client privilege should supersede the public policy interest in encouraging witnesses to participate in the judicial process.

We have said that public policy favors the application of absolute privilege because absolute privilege seeks to encourage witnesses to participate in judicial proceedings so that the search for truth may be fruitful. *Matthis*, 243 Minn. at 223, 67 N.W.2d at 417; *see also Briscoe v. LaHue*, 460 U.S. 325, 332–33, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (" '[T]he claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible.' ") (quoting *Calkins v. Sumner*, 13 Wis. 193, 197 (1860)). If public policy dictates that testimony by a witness is protected by absolute privilege as against a defamation claim, the same policy may be served through application of the privilege to bar all legal claims based on that same testimony.

Before applying absolute privilege, we look to see if there are competing policy interests that would counsel against application of the privilege. *See Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 73 P.3d 687, 697 (2003) (noting that the general public interest in encouraging zealous advocacy as part of the search for truth "is counterbalanced by the need to adequately punish and discourage [litigation] misconduct"). A separate duty of a witness to remain silent, grounded for example in the attorney-client privilege, might be a reason the public policy analysis would weigh against application of the absolute privilege doctrine. We have no such situation here. Although count I in the complaint is titled "breach of confidences," there is nothing in Newgard's affidavit that can properly be viewed as information protected by the attorney-client privilege. *See Kobluk v. Univ. of Minn.*, 574 N.W.2d 436, 440–42 (Minn. 1998) (noting that not all information communicated to an attorney is protected by attorney-client privilege, but only that information which is communicated for the purpose of obtaining legal advice). Thus, Newgard's duty to protect confidential client information is not at issue here.

Instead, we must determine whether Newgard's statements sound in defamation. We have held that absolute privilege applies to defamatory statements made by witnesses in judicial proceedings and that absolute privilege protects witnesses from lawsuits based on statements made during judicial proceedings. *Jenson*, 273 Minn. at 393, 141 N.W.2d at 490. Absolute privilege also bars claims sounding in defamation—that is claims where the injury stemmed from and grew out of the defamation. *See Zagaros v. Erickson*, 558 N.W.2d 516, 523 (Minn.App.1997) (applying witness immunity where the negligence claim was so intertwined with defamatory statements that the court did not expect the jury to distinguish between the two); *Freier v. Indep. Sch. Dist. No. 197*, 356 N.W.2d 724, 733 (Minn.App.1984) (holding that "defamation and emotional distress are merely two different labels for the same alleged tort in this case, and that the doctrine of absolute privilege applies with equal force to both claims."); *Pinto v. Internationale Set Inc.*, 650 F.Supp. 306, 309 (D.Minn.1986) ("[I]n Minnesota, a plaintiff cannot elude the absolute privilege by relabeling a claim that sounds in defa-

mation."); *cf. Wild v. Rarig,* 302 Minn. 419, 446–47, 234 N.W.2d 775, 793 (1975) (concluding that where a wrongful interference with business relationships claim stemmed from and grew out of the defamation as in a defamation claim, both actions were governed by the statute of limitations for defamation).

Appellant argues that absolute privilege may only be applied in defamation cases, and since none of appellant's claims sound in defamation, the privilege is precluded here. Newgard maintains that absolute privilege should be broadly applied and should not be limited only to claims sounding in defamation.

In its complaint against Newgard, the appellant alleges that Newgard "conspired * * * to do as much harm and damage as possible to [appellant]" and that Newgard's affidavit contains "false statements." The appellant alleges that these "false statements" are

1) specific statements regarding a client's communication and instructions to set up a series of corporations that Newgard *falsely claims* was to engage in funneling money through a series of companies to avoid taxes; 2) specific statements about a client's communications regarding credit cards; and 3) a client's specific communications and information regarding issues of ownership interests of that client.

(Emphasis added.) In their invasion of privacy and civil conspiracy claims, appel-

lant further alleges that Newgard "placed [the firm] in a *false and defaming* position in the public." (Emphasis added.)

Defamation is a statement that (1) is false, (2) communicated to someone other than the plaintiff, and (3) harms the plaintiff's reputation or esteem in the community. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980). Although appellant frames its claims as breach of confidences, invasion of privacy, and civil conspiracy, the basis of appellant's complaint is that Newgard made false statements when she knew that those statements would harm the firm. Regardless of the label, appellant's claims are in essence defamation claims; they are claims that arise as a consequence of Newgard's purported defamatory statements. Since we determine that appellant's claims for breach of confidences, invasion of privacy, and civil conspiracy sound in defamation, we need not reach the question of whether absolute privilege applies to claims not sounding in defamation, and we find that absolute privilege operates to bar all of the claims at issue on this appeal.

The decision of the court of appeals is affirmed.