Lawrence **LEIENDECKER**, et al., Respondents/Cross–Appellants,

v.

**ASIAN WOMEN UNITED OF MINNESOTA**, et al., Appellants/Cross–Respondents (A12–1978),

Greenstein, Mabley & Wall, L.L.C., et al., Cross–Respondents,

Ruvelson & Kautzer, Ltd., et al., Cross–Respondents,

Maria Gloria Fressia, et al., Appellants/Cross–Respondents (A12–2015),

Susan L. Triplett, Cross–Respondent.

Nos. A12–1978, A12–2015.

Court of Appeals of Minnesota.

June 3, 2013.

Review Granted Aug. 20, 2013.

744

Thomas Gunther, Virnig & Gunther, PLLC, Minneapolis, MN, for respondents/cross-appellants Lawrence and Sinuon Leiendecker.

Kay Nord Hunt, Phillip A. Cole, Bryan R. Feldhaus, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for appellants/cross-respondents Asian Women United of Minnesota, Melani Suarez, and Claudia R. Stahl.

Thomas P. Kane, Nadia B. Hasan, Hinshaw & Culbertson LLP, Minneapolis, MN, for cross-respondents Greenstein, Mabley & Wall, L.L.C. and Frank T. Mabley.

Bryon G. Ascheman, Corinne Ivanca, Burke & Thomas, PLLP, Arden Hills, MN, for cross-respondents Ruvelson & Kautzer, Ltd. and Edward F. Kautzer.

Patrick J. Sauter, Rachel B. Peterson, Bassford Remele, P.A., Minneapolis, MN, for appellants/cross-respondents Maria Gloria Fressia, Suzanne M. Cook, Valerie F. Wurster, Kristine M. Arneson, Hong–Ngoc (Ruby) H.N. Nguyen, Naweichi

Temu, Regina M. Chu, Saran B. Crayton, Quoc–Bao Doan Do, and Sushila R. Shah.

Louise A. Behrendt, Stich, Angell, Kreidler, Dodge & Unke, P.A., Minneapolis, MN, Georgeanna M.H. Ihrke, Eden Prairie, MN, for cross-respondent Susan Triplett.

Considered and decided by CONNOLLY, Presiding Judge; ROSS, Judge; and STAUBER, Judge.

## OPINION

CONNOLLY, Judge.

Appellants jointly challenge the district court's denial of their motions to dismiss respondents' complaint pursuant to Minnesota's anti-SLAPP statute, arguing that the district court misapplied the statute. By notice of related appeal, respondents also challenge the district court's application of the anti-SLAPP statute, arguing that the statute was not properly invoked. In addition, respondents argue that the district court erred by (1) dismissing or restricting their claims against certain defendants on grounds of absolute privilege; (2) dismissing their claims of abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium; and (3) compelling arbitration of one of the two respondents' remaining claims. We affirm.

## FACTS

Appellant Asian Women United of Minnesota (AWUM) is a Minnesota nonprofit corporation that operates a battered women's shelter and provides advocacy services primarily within the Asian–Pacific Islander community. Respondent Sinuon Leiendecker was employed as AWUM's executive director from July 1999 until her termination in February 2004. Respondent Lawrence Leiendecker performed pro bono legal services for AWUM from 2002 until early 2004. AWUM and the Leiendeckers have been involved in litigation for nearly a decade, including four previous lawsuits and two previous appeals.

In November 2003, the Leiendeckers formed a new board of directors for AWUM out of concern that the current board was operating illegally. The new board terminated the old board members and commenced a declaratory-judgment action to have the new board confirmed as AWUM's governing body. The old board filed a third-party claim against Sinuon Leiendecker, alleging that she had been terminated and received unsanctioned wages and benefits. Following a hearing, the district court declared that the old board was AWUM's governing body, excluding two board members, appellants Quoc–Bao Doan Do and Sushila R. Shah, and invalidated Sinuon Leiendecker's termination. The district court allowed the remainder of the old board's third-party claim to proceed.

Upon receiving the order, AWUM's board of directors terminated Sinuon Leiendecker. Subsequently, Sinuon Leiendecker moved for advance indemnification pursuant to Minnesota law and AWUM's bylaws, and AWUM moved to join Lawrence Leiendecker as a party to its third-party claim, alleging legal malpractice. The district court denied AWUM's motion but granted Sinuon Leiendecker's motion for advance indemnification. In August 2005, the district court dismissed AWUM's claim for failure to tender advance indemnification.

Later in August 2005, Sinuon Leiendecker filed a wrongful-termination action against AWUM, Do, and Shah. The district court granted AWUM's motion to dismiss the action, but this court reversed and

remanded. *See Leiendecker v. Asian Women United of Minn.*, 731 N.W.2d 836 (Minn.App.2007), *review denied* (Minn. Aug. 7, 2007). The parties ultimately settled the case in August 2008.

In February 2007, AWUM filed a legal-malpractice action against Lawrence Leiendecker, who counterclaimed for indemnification and moved for advance indemnification. Lawrence Leiendecker also unsuccessfully moved to dismiss AWUM's complaint, but while his motion for reconsideration was pending, AWUM requested that the district court dismiss its legal-malpractice action and Lawrence Leiendecker's counterclaim. The district court dismissed AWUM's complaint in February 2010, but allowed Lawrence Leiendecker's counterclaim to proceed. Subsequently, the district court granted Lawrence Leiendecker's motion for summary judgment on his counterclaim for indemnification and motion for advance indemnification.

In February 2008, while Sinuon Leiendecker's employment action and AWUM's legal-malpractice action were pending, AWUM filed a conversion action against Sinuon Leiendecker, alleging that she took unauthorized compensation. Sinuon Leiendecker counterclaimed for indemnification and moved for advance indemnification. Although the district court initially denied Sinuon Leiendecker's motion, the district court granted her motion on remand from this court's reversal of its original order. *See Asian Women United of Minn. v. Leiendecker*, 789 N.W.2d 688, 693 (Minn.App.2010). AWUM again failed to tender advance indemnification, resulting in dismissal of the conversion action in June 2011.

The Leiendeckers commenced this, the fifth lawsuit between the parties, in February 2012, alleging that AWUM maliciously prosecuted the legal-malpractice and conversion actions. The Leiendeckers also asserted claims of abuse of process, intentional infliction of emotional distress, civil conspiracy, civil aiding and abetting, negligent infliction of emotional distress, loss of consortium, and vicarious liability. In addition to AWUM, the Leiendeckers sued appellants Claudia Staul and Melani Suarez, the current and former executive directors of AWUM, and a number of current and former members of AWUM's board of directors.[1] We will refer to AWUM and its current and former executive directors and board members collectively as AWUM. The Leiendeckers also sued Susan L. Triplett, who performed accounting services for AWUM and submitted an affidavit in connection with AWUM's conversion action against Sinuon Leiendecker; Frank T. Mabley and Greenstein, Mabley & Wall, LLC (Mabley), who served as AWUM's legal counsel beginning in early 2004; and Edward F. Kautzer and Ruvelson & Kautzer, Ltd. (Kautzer), who were hired by AWUM to provide expert testimony in connection with its legal-malpractice action against Lawrence Leiendecker.

AWUM, Triplett, Mabley, and Kautzer all brought motions to dismiss the Leiendeckers' complaint. Following a hearing, the district court, in relevant part, (1) denied AWUM's motion to dismiss pursuant to the anti-SLAPP statute; (2) dismissed Lawrence Leiendecker's claims against Kautzer and restricted the Leiendeckers' claims against Do and Shah to their nontestimonial actions on grounds of absolute privilege; (3) dismissed the Leiendeckers'

1. The board members are appellants Maria Gloria Fressia, Suzanne M. Cook, Valerie F. Wurster, Kristine M. Arneson, Hong–Ngoc (Ruby) H.N. Nguyen, Naweichi Temu, Regina M. Chu, Saran B. Crayton, Quoc–Bao Doan Do, and Sushila R. Shah.

claims of abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium under Minn. R. Civ. P. 12.02(e); (4) allowed the Leiendeckers' claims of malicious prosecution, civil conspiracy, civil aiding and abetting, and vicarious liability to proceed; and (5) compelled arbitration of Sinuon Leiendecker's remaining claims. This appeal follows.

## ISSUES

I. Did the district court err in applying Minnesota's anti-SLAPP statute?

II. Did the district court err in dismissing Lawrence Leiendecker's claims against Kautzer and restricting the Leiendeckers' claims against Do and Shah on grounds of absolute privilege?

III. Did the district court err in dismissing the Leiendeckers' claims of abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium under rule 12.02(e)?

IV. Did the district court err in compelling arbitration of Sinuon Leiendecker's remaining claims?

## ANALYSIS

### I. Minnesota's anti-SLAPP statute

■ "A SLAPP suit is a Strategic Lawsuit Against Public Participation, initiated with the goal of stopping citizens from exercising their political rights or to punish them for having done so." *Middle–Snake–Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 838 (Minn. 2010) (quotations omitted). To protect citizens and organizations from such lawsuits, the Minnesota legislature in 1994 enacted an anti-SLAPP statute, Minn.Stat. §§ 554.01–.05 (2012). *Id.* at 839. "Minne-

sota's anti-SLAPP statute seeks to vindicate the important constitutional right to publicly participate in government." *Nexus v. Swift*, 785 N.W.2d 771, 779–80 (Minn. App.2010).

The anti-SLAPP statute "applies to any motion in a judicial proceeding to dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involves public participation." Minn.Stat. § 554.02, subd. 1. Public participation means "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action." Minn.Stat. § 554.01, subd. 6. The district court must grant a motion to dismiss under the anti-SLAPP statute unless the responding party produces "clear and convincing evidence that the acts of the moving party are not immunized from liability" because the moving party's "conduct or speech constitutes a tort or a violation of a person's constitutional rights." Minn.Stat. §§ 554.02, subd. 2(3), .03.

■ Accordingly, a district court must engage in a two-step analysis when evaluating a motion to dismiss pursuant to the anti-SLAPP statute. First, a district court must make a preliminary determination that the anti-SLAPP statute is properly invoked. *Nexus*, 785 N.W.2d at 782. The moving party "bears a 'minimal burden' of making a threshold showing that the plaintiff's underlying claim materially relates to an act of the defendant's that involved public participation." *Id.* (quoting *Stengrim*, 784 N.W.2d at 841). Once a district court determines that the moving party has made this threshold showing, "the burden then shifts to the [responding party] to 'show by clear and convincing evidence that the acts at issue are not immune under Minn.Stat. § 554.03.'" *Id.* (quoting *Stengrim*, 784 N.W.2d at 841).

Minn.Stat. § 554.03 provides that "[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action is immune from liability, unless the conduct or speech constitutes a tort or a violation of a person's constitutional rights." The responding party's clear-and-convincing-evidence burden is a heavy burden, but it is "not insurmountable for parties with meritorious claims." *Stengrim,* 784 N.W.2d at 839.

■ AWUM and the Leiendeckers both challenge the district court's application of the anti-SLAPP statute in this case. AWUM argues that the district court misapplied the statute in determining that the Leiendeckers established by clear-and-convincing evidence that AWUM's acts were tortious and thus not immune under the statute. AWUM asserts that the statutory burden imposed on plaintiffs under section 554.02, subd. 2(3) is not a pleading burden, but an evidentiary burden, and that this court's decision in *Nexus* "erroneously applied a Minn. R. Civ. P. 12 pleading standard, not the 'clear and convincing evidence' standard set out in the statute." The Leiendeckers, on the other hand, argue that the district court erred in determining that AWUM made a threshold showing that the anti-SLAPP statute was properly invoked, i.e., that their claims materially relate to acts of AWUM that involve public participation. Because we conclude that the district court correctly applied the rule 12 pleading standard in evaluating AWUM's motion, we need not address the challenge raised by the Leiendeckers in their notice of related appeal.

■ Assuming that the anti-SLAPP statute was properly invoked, the burden shifted to the Leiendeckers to produce clear-and-convincing evidence that AWUM's actions were not immune from liability, i.e., conduct or speech that constitutes a tort or a violation of a person's

constitutional rights. *See* Minn. Stat §§ 554.02, subd. 2(3), .03. The district court determined that they met their burden by "clearly and convincingly demonstrating that [AWUM's] actions were tortious." "On appeal from denial of a motion for judgment on the pleadings, we review de novo whether the plaintiff set forth a legally sufficient claim for relief." *Nexus,* 785 N.W.2d at 782–83.

AWUM argues that the district court erred because respondents failed to present any evidence in response to its motion and merely relied on the allegations in their complaint. In so arguing, AWUM contends that this court erroneously applied the anti-SLAPP statute in two previous cases, *Nexus* and *Marchant Inv. & Mgmt. Co. v. St. Anthony W. Neighborhood Org., Inc.,* 694 N.W.2d 92 (Minn.App. 2005), by overlooking the plain "clear and convincing evidence" language in Minn. Stat. § 554.02, subd. 2(3), and instead applying the rule 12 standard to anti-SLAPP motions brought at the pleading stage. We disagree.

In *Marchant,* a real-estate developer sued a neighborhood nonprofit organization for defamation and other related torts. 694 N.W.2d at 93–94. The defendant denied the claims and moved for dismissal under Minnesota's anti-SLAPP statute. *Id.* at 94. The district court granted the defendant's motion, holding that the plaintiff had "failed to clearly and convincingly demonstrate that any of the contested statements ... conveyed a defamatory meaning." *Id.* On appeal, this court affirmed the dismissal of the plaintiff's claims. *Id.* at 98. This court described the framework for its decision as follows:

> Because this is an appeal from judgment on the pleadings, our consideration focuses on the pleadings' allegations. We may also consider documents and statements that are incorporated by refer-

ence into the pleadings. All facts alleged in the complaint must be taken as true and all reasonable inferences drawn in favor of the nonmoving party.

Applying these principles, the question we must answer is whether the district court erred in ruling as a matter of law that [the plaintiff] did not allege facts that would clearly and convincingly show that [the defendant's] statements constitute defamation.

*Id.* at 95 (citations omitted).

In *Nexus,* a nonprofit corporation that planned to build a residential treatment facility for juvenile sex offenders brought a defamation claim against an individual who resided near the planned location for the facility. 785 N.W.2d at 776. The defendant asserted immunity and moved for dismissal under Minnesota's anti-SLAPP statute. *Id.* at 777. In opposition to the defendant's motion, the plaintiff argued in part that, if the anti-SLAPP statute mandated dismissal of its defamation action, the statute violated its constitutional right to a jury trial. *Id.* The district court agreed and denied the defendant's motion on grounds that dismissal would violate the plaintiff's constitutional right to a jury trial and because the plaintiff had stated a claim of defamation under rule 12. *Id.* at 777–78.

On appeal, this court reversed, determining that the anti-SLAPP statute did not violate the plaintiff's right to a jury trial. *Id.* at 780. Further, this court concluded that the district court's concern that the anti-SLAPP statute required it to determine at the outset whether the defendant's statements were defamatory and thus usurped the plaintiff's right to have a jury make findings of fact material to its defamation claim was unwarranted, stating:

As this court held in *Marchant,* a motion to dismiss for failure to state a claim that asserts immunity under the anti-SLAPP statute remains based on the judgment-on-the-pleadings standard. In conjunction with the statutory clear-and-convincing standard, this means that the district court was required to determine whether the allegations in the pleadings and the documents and statements incorporated therein, when all facts alleged in the complaint were taken as true and all reasonable inferences were drawn in [the plaintiff's] favor, permitted it to conclude that [the plaintiff] had produced clear and convincing evidence that [the defendant's] statements were defamatory. The question is not whether [the plaintiff] will ultimately prove defamation; the question is whether [the plaintiff] produced clear and convincing evidence of defamation *in light of the Rule 12 standard for granting judgment on the pleadings.*

*Id.* at 781 (citations omitted).

The *Nexus* court then addressed the procedural framework of the anti-SLAPP statute and concluded that "[t]he district court did not apply the appropriate standard in addressing the elements of a defamation claim." *Id.* at 783. The district court merely found that the plaintiff alleged the appropriate elements of defamation, but did not apply the clear-and-convincing-evidence standard mandated by the statute, which requires consideration of the defenses raised by the defendant. *Id.* Accordingly, this court reversed and remanded for further proceedings. *Id.* at 786.

■ AWUM urges us to abandon the rule of law that we adopted in *Marchant* and applied in *Nexus,* and asks us to hold that a responding party must present actual evidence to avoid dismissal under Minnesota's anti-SLAPP statute and may not rely solely on the allegations in its

complaint. But "appellate courts are bound by the doctrine of stare decisis, which directs that 'we adhere to former decisions in order that there might be stability in the law.'" *Doe v. Lutheran High Sch. of Greater Minneapolis,* 702 N.W.2d 322, 330 (Minn.App.2005) (quoting *Oanes v. Allstate Ins. Co.,* 617 N.W.2d 401, 406 (Minn.2000)), *review denied* (Minn. Oct. 26, 2005). And, although stare decisis "is not an inflexible rule of law," we will not overrule a former decision absent a compelling reason. *See Oanes,* 617 N.W.2d at 406 (quotation omitted).

Because we still believe there is sound basis for the rule established and applied in *Nexus* and *Marchant,* and because AWUM has not provided a compelling reason to abandon it, we decline to do so.[2] Accordingly, we conclude that the district court did not err in determining that the Leiendeckers "need only *allege* facts that, together with the fair inferences they create, clearly and convincingly demonstrate that the acts at issue are not immune" and "need not produce actual evidence to meet its burden." And because AWUM does not challenge the sufficiency of the allegations in the Leiendeckers' complaint, we do not address that issue. *See Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn.1982) (providing that issues not briefed on appeal are waived).

## II. Absolute-privilege doctrine

▇▇▇▇ The Leiendeckers challenge the district court's (1) dismissal of their claims against Kautzer and (2) restriction of their claims against Do and Shah to nontestimonial activities, on grounds of absolute privilege. Whether the district court erred in dismissing a claim on the basis of absolute privilege is a question of law that we review de novo. *See Mahoney & Hagberg v.*

*Newgard,* 729 N.W.2d 302, 306 (Minn. 2007).

▇▇▇▇ The Minnesota Supreme Court has held that "absolute privilege protects witnesses from lawsuits based on statements made during judicial proceedings." *Id.* at 309. In addition to defamation lawsuits, "[a]bsolute privilege also bars claims sounding in defamation—that is claims where the injury stemmed from and grew out of the defamation." *Id.* "[P]ublic policy favors the application of absolute privilege because absolute privilege seeks to encourage witnesses to participate in judicial proceedings so that the search for truth may be fruitful." *Id.* And "[i]f public policy dictates that testimony by a witness is protected by absolute privilege as against a defamation claim, the same policy may be served through application of the privilege to bar all legal claims based on that same testimony." *Id.* "When absolute privilege applies, the speaker is completely shielded from liability for her statements, even statements that are intentionally false or made with malice." *Id.* at 306.

In *Mahoney,* a law firm sued one of its former secretaries, alleging that an affidavit she submitted during a lawsuit was a breach of client and firm confidences, a breach of fiduciary duty, an invasion of privacy, and part of a civil conspiracy. *Id.* at 305. The law firm further alleged that its secretary was conspiring to do it harm. *Id.* The secretary moved to dismiss on the basis of absolute privilege, but the district court denied her motion. *Id.* This court reversed. *Id.* The Minnesota Supreme Court affirmed our decision on grounds that the law firm's claims sounded in defamation and were barred by absolute privilege, stating:

---

**2.** Most importantly, if we were to reverse our ruling and adopt the procedure advocated by

AWUM, we would be infringing on a constitutional right to a jury trial.

Although appellant frames its claims as breaches of confidences, invasion of privacy, and civil conspiracy, the basis of appellant's complaint is that [the defendant] made false statements when she knew that those statements would harm the firm. Regardless of the label, appellant's claims are in essence defamation claims; they are claims that arise as a consequence of [defendant's] purported defamatory statements.

*Id.* at 310.

The Leiendeckers argue that their malicious prosecution and other claims against Kautzer, Do, and Shah do not sound in defamation because such claims "do not involve injuries that stem from defamation, but involve injuries that grow out of maliciously and/or wrongfully implemented and prosecuted legal proceedings." In other words, they contend that their injuries do not stem from the content of Kautzer, Do, and Shah's allegedly false statements in their affidavits, but from the abusive conduct of the litigation. They argue that there is a distinction "between tort claims that are concerned with the intent of a defendant in utilizing judicial process and those that are merely concerned with a defendant's communications." We disagree.

Similar to the law firm's claims in *Mahoney*, the Leiendeckers' claims against Kautzer are based solely on allegations that he knowingly made false statements in an expert affidavit submitted during AWUM's legal-malpractice claim against Lawrence Leiendecker. In their complaint, the Leiendeckers allege that

Kautzer with knowledge of the wrongful objectives to be attained consciously provided information and affidavit testimony that was materially false and/or misleading that purposefully omitted facts known to then exist; disclosure of which was necessary to make the information and testimony not false and/or misleading; for the intended purpose of encouraging and assisting AWUM in the abusive and malicious prosecution of claims against Lawrence Leiendecker.

In the same way, the Leiendeckers allege in their complaint that Do and Shah knowingly made false statements in affidavits submitted during AWUM's conversion and legal-malpractice lawsuits against them "for the intended purpose of encouraging and assisting AWUM in the abusive and malicious prosecution of claims against" them. Accordingly, all of the Leiendeckers' claims against Kautzer and those of their claims against Do and Shah that are based on affidavits submitted during litigation sound in defamation, in that they stem from or grow out of Kautzer, Do, and Shah's allegedly false statements.

The Leiendeckers also argue that the absolute-privilege doctrine should not apply in this case because of the alleged malice behind Kautzer, Do, and Shah's affidavits. But "[w]hen absolute privilege applies, the speaker is completely shielded from liability for her statements, even statements that are intentionally false or made with malice." *Id.* at 306. This doctrine applies equally to expert witnesses. Therefore, the district court did not err in dismissing the Leiendeckers' claims against Kautzer and restricting their claims against Do and Shah on the basis of absolute privilege.

### III. Rule 12.02(e) dismissal

The Leiendeckers next challenge the district court's dismissal of their claims of abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium under Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted. When reviewing a district court's dismissal of a case for failure to

state a claim upon which relief can be granted under rule 12.02(e), the question before this court is whether the complaint sets forth a legally sufficient claim for relief. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn.2003). Our standard of review is therefore de novo. *Id.* We "must consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the non-moving party." *Id.*

### A. Abuse of process

 The essential elements of a cause of action for abuse of process are "the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not." *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn.App.1997), *review denied* (Minn. Oct. 31, 1997). The Minnesota Supreme Court recently defined "process" in another context as

> the proceedings in any action or prosecution; a summons or writ, esp. to appear or respond in court.... *[p]rocess* is so denominated because it *proceeds* or issues forth in order to bring the defendant into court, to answer the charge preferred against him, and signifies the writs or judicial means by which he is brought to answer.

*Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d 692, 697 (Minn.2012) (quoting *Black's Law Dictionary* 1325 (9th ed.2009) (quotation marks omitted)). But, several courts, including the United States District Court for the District of Minnesota, have held that the institution of a lawsuit alone is insufficient as a matter of law to constitute an abuse of process. *See Surgidev Corp. v. Eye Tech., Inc.*, 625 F.Supp. 800, 805–06 n. 4 (D.Minn.1986) (following sever-

al other federal courts' decisions in holding that "the mere issuance of a complaint, standing alone, is an insufficient ground on which to base an abuse of process [claim]"); *see also* Restatement (Second) of Torts § 682 cmt. a (1977) ("The gravamen of the misconduct for which the liability [for abuse of process] is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.").

 The Leiendeckers argue that AWUM used the legal-malpractice and conversion actions "as instruments of coercion and harassment, rather than as legitimate means to resolve disputes." To the extent that the Leiendeckers' claim is based on AWUM's commencement of the legal-malpractice and conversion actions, it fails under the guidance of the *Surgidev* decision and the Restatement. Regardless, the Leiendeckers do not allege any facts to support their argument that the two lawsuits were initially filed for an ulterior purpose. That leaves the Leiendeckers' claim that AWUM improperly continued to prosecute the two lawsuits after they were filed in order to harass them and coerce collateral advantages, e.g., to induce Sinuon Leiendecker to negotiate more generously with regard to her pending legal actions against AWUM. But the only allegation of such ulterior purpose and use of process is AWUM's attempt to negotiate a global settlement between the parties, which is insufficient to plead a claim of abuse of process.

### B. Intentional infliction of emotional distress

 To prevent fictitious and speculative claims, the tort of intentional infliction of emotional distress is limited to

cases involving particularly egregious facts. *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 866 (Minn.2003). To recover on an intentional-infliction-of-emotional-distress claim, a plaintiff must establish four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn.1983). Extreme and outrageous conduct is conduct that is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439 (quotation omitted). And the distress inflicted must be so severe "that no reasonable [person] could be expected to endure it." *Id.* (quotation omitted).

The Leiendeckers argue that the district court went beyond determining whether they pleaded a proper claim for intentional infliction of emotional distress and weighed the alleged facts, which is inappropriate under Minn. R. Civ. P. 12.02(e). But the Minnesota Supreme Court has recognized that a complainant has a high threshold standard of proof that must be met before an intentional-infliction-of-emotional-distress claim can be submitted to the jury. *See id.* And, this court has stated that "[i]t is for the court to determine whether, on the evidence, severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Kuelbs v. Williams*, 609 N.W.2d 10, 17 (Minn.App.2000), *review denied* (Minn. June 27, 2000). As such, the district court did not err in determining that the Leiendeckers had not met their burden in this case.

The Leiendeckers also argue that the district court improperly trivialized the devastating effects that such lawsuits have on the health of real people who have been maliciously and abusively sued with fabricated claims over the course of many years. But, as the district court stated, the facts reflect that the parties have been "involved in a long-running, acrimonious, even spite-filled dispute—but they also establish that the dispute is essentially a business and legal one." As such, the Leiendeckers fail to allege conduct that is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *See Hubbard*, 330 N.W.2d at 439 (quotation omitted). Furthermore, the Leiendeckers' conclusory allegations that they suffered severe emotional distress are not sufficient to satisfy their heavy burden to withstand a motion to dismiss.

### C. Negligent infliction of emotional distress

The Leiendeckers' negligent-infliction-of-emotional-distress claims likewise must meet rigorous requirements to survive dismissal. *See K.A.C. v. Benson*, 527 N.W.2d 553, 559 (Minn.1995) (acknowledging the court's historic concerns regarding the unintended and unreasonable results of negligent-infliction-of-emotional-distress claims). To prevail on this claim, a plaintiff must establish that he or she "is within a zone of danger of physical impact, reasonably fears for his or her own safety, and consequently suffers severe emotional distress with resultant physical injury." *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902, 907 (Minn.App.1987), *review denied* (Minn. Nov. 13, 1987).

The only exception to the zone-of-danger rule is when a plaintiff experiences mental anguish or suffering resulting from "a direct invasion of his rights, such as defamation, malicious prosecution, or other willful, wanton or malicious conduct." *Id.* In all cases, a plaintiff must

demonstrate physical manifestations of the severe emotional distress. *Soucek v. Banham,* 503 N.W.2d 153, 164 (Minn.App. 1993). Because the Leiendeckers do not allege any physical manifestations in their complaint, their claim was properly dismissed.

### D. Loss of consortium

▮▮▮▮ Because a loss-of-consortium claim is a derivative claim, the right to recover from a defendant derives, through marriage, from an injured spouse's ability to recover from the same defendant. *Huffer v. Kozitza,* 375 N.W.2d 480, 482 (Minn. 1985). But there can be no recovery for loss of consortium in the absence of direct physical injury to the spouse in the underlying tort claim. *Kohler v. Fletcher,* 442 N.W.2d 169, 173 (Minn.App.1989), *review denied* (Minn. Aug. 25, 1989). Therefore, because the Leiendeckers do not allege a direct physical injury, their claims for loss of consortium were properly dismissed.

## IV. Arbitration[3]

At the conclusion of its order, the district court granted AWUM's motion to compel arbitration, finding that "[n]o party disputes the validity of the arbitration agreement here and this dispute is plainly within its scope." Sinuon Leiendecker challenges this conclusion on several grounds.

▮▮▮▮ We review the district court's interpretation of an arbitration clause de novo. *Onvoy, Inc. v. SHAL, LLC,* 669 N.W.2d 344, 349 (Minn.2003). The party opposing arbitration has the burden of proving that the dispute is not within the scope of the arbitration agreement. *Id.* "When determining whether parties agreed to arbitrate an issue, the court analyzes whether a valid arbitration agree-

ment exists and, if so, whether the dispute falls within the scope of the agreement." *Churchill Envtl. & Indus. Equity Partners v. Ernst & Young, L.L.P.,* 643 N.W.2d 333, 337 (Minn.App.2002). "[W]hen a valid arbitration agreement exists, any doubts regarding the scope of arbitrable issues must be resolved in favor of arbitration." *Id.* at 336.

Sinuon Leiendecker first argues that AWUM never made a proper motion to compel arbitration. Her argument is based on Minn.Stat. § 572B.07(a) (2012), which states that the district court shall order the parties to arbitrate "[o]n motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement," unless the court finds that there is no enforceable agreement to arbitrate. But AWUM did move the district court to dismiss Sinuon Leiendecker's claims based on the settlement agreement and release or, in the alternative, to compel arbitration, and AWUM's attorney asked the district court, at the motion hearing, to treat its motion to dismiss as a motion to compel under the statute. Therefore, Sinuon Leiendecker's argument is misplaced.

▮▮▮▮ Next, Sinuon Leiendecker argues that AWUM waived arbitration by placing the matter before the district court. Waiver is defined as "a voluntary relinquishment of a known right." *Har–Mar, Inc. v. Thorsen & Thorshov, Inc.,* 300 Minn. 149, 156–57, 218 N.W.2d 751, 756 (Minn.1974) (quotation omitted). Applying this definition, AWUM cannot be said to have waived its contractual rights to arbitration. Shortly after the Leiendeckers commenced this action, and before interposing an answer or conducting discovery, AWUM moved to dismiss Sinuon Leiendecker's claims as barred by the settle-

---

**3.** The issue regarding arbitration applies solely to Sinuon Leiendecker's claims because Lawrence Leiendecker was not a party to the settlement agreement and release executed by Sinuon Leiendecker and AWUM in conjunction with her employment action.

ment agreement and release and to compel arbitration in the event she contested the scope or application of the release. AWUM did not initiate this action in the district court. Furthermore, Sinuon Leiendecker did not raise the issue of waiver before the district court, and thus the claim is not properly before this court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." (quotation omitted)).

■ Finally, Sinuon Leiendecker argues that the current dispute is clearly outside the scope of the arbitration clause. We disagree. The settlement agreement and release at issue in this case clearly states that "[a]ny future disputes concerning the scope or application of this Settlement Agreement and Release shall be determined by binding arbitration with the American Arbitration Association." Therefore, the district court did not err in compelling arbitration. *See Churchill,* 643 N.W.2d at 337 (determining that dispute over whether plaintiff's claims were governed by, or fell within the scope of, an agreement to arbitrate was squarely within the scope of clause requiring arbitration of *"any issue* concerning the extent to which any dispute is subject to arbitration or concerning the applicability, interpretation, or enforceability of these procedures").

### DECISION

Because the district court correctly applied Minnesota's anti-SLAPP statute in evaluating AWUM's motion to dismiss and did not otherwise err, we affirm.

**Affirmed.**